## OPINION OF THE JUSTICES OF THE SUPREME COURT IN RESPONSE TO QUESTIONS PROPOUNDED BY THE GOVERNOR OF DELAWARE

*(November 18, 1961.)*

To His Excellency Elbert N. Carvel, Governor of Delaware:

Reference is made to your letter of September 19, 1961, addressed to the Chief Justice, requesting the opinion of the members of the Supreme Court upon certain questions involving the construction of the provisions of two articles of the Constitution of the State of Delaware. On November 17, 1961 we answered the question involving the construction of Article III, Section 18, of the Constitution, *Del. C. Ann.* This opinion constitutes our answer to the remaining two questions contained in your letter of September 19, 1961.

The questions remaining for answer concern the construction of Article II, Section 4, which, as amended on April 10, 1959, reads as follows:

"Section 4. The General Assembly shall meet on the first Tuesday of January, nineteen hundred and sixty-one, and on the same day in every second year thereafter, and on the first Tuesday in February, nineteen hundred and sixty-two, and on the same day in every second year thereafter, and at no other time, unless convened by the Governor. When the General Assembly shall be convened by the Governor, the session shall not continue longer than thirty days.

"The General Assembly may continue its session so long as in its judgment the public interest may require, for a period not longer than ninety legislative days in odd years and thirty legislative days in even years. In any of said thirty legislative day sessions in even years, the General Assembly shall consider no bills other than (1) bills having to do with budgetary, revenue and financial matters, (2) legislation dealing with an acute emergency, and (3) legislation in the general public welfare."

You have asked us the following questions involving the proper meaning of this particular constitutional provision:

1. "Do the words 'final adjournment' as appearing in Article 3, Section 18 mean final adjournment of each of the annual meetings of the General Assembly now provided for by Article 2, Section 4, or is the phrase limited to the adjournment at the end of the meeting which commences in even number years?"

2. "Are bills introduced during the meeting of the General Assembly which commenced on the first Tuesday in January of 1961 automatically carried over to the meeting which will commence on the first Tuesday in February of 1962, or will it be necessary for the General Assembly to re-introduce bills and resolutions in February of 1962 which were not passed prior to that date?"

We will give our answers to the quoted questions in the order in which they are set forth.

*Question No. 1*

By Article II, Section 1, the Constitution of this State provides that the legislative power shall be vested "in a General Assembly" consisting of a Senate and a House of Representatives. By Article II, Section 2, it is provided that the House shall be composed of thirty-five members chosen for terms of two years, and that the Senate shall be composed of seventeen members chosen for terms of four years. By reason of Section 3 of the schedule appended to the Constitution, seven Senators are elected for four year terms in the years of presidential elections, and ten Senators are elected for four year terms in the years of non-presidential elections. The members of the House are elected for two year terms at each biennial election. By reason of Section 4 of the Constitutional schedule the terms of both Senators and members of the House begin "on the day next after their election".

It is thus apparent that by reason of Article II, Sections 1 and 2, *one* General Assembly is created with a life of two years, and that every two years a new General Assembly is created which in turn has a life of two years.

The original Constitution of 1897, by Article II, Section 4, required each General Assembly to meet biennially on the first Tuesday in January in regular session, and in such special sessions to which it shall be convened by the Governor.

By the amendment of 1959 (quoted heretofore) Article II, Section 4, now requires the General Assembly to meet in two regular annual sessions, one in each year of its existence. This requirement of Article II, Section 4, is the same in principle as the Twentieth Amendment to the Federal Constitution, Section 2, which requires the Congress, which also has a life span of two years, to assemble on the 3rd of January of each year. Despite the requirement of annual sessions, how-

ever, there is but one Congress existing for the space of two years. *Pocket Veto Case*, 279 *U. S.* 655, 49 *S. Ct.* 463, 73 *L. Ed.* 894. We think the same follows with respect to the General Assembly. The effect of the amended Article II, Section 4, of the Delaware Constitution is merely to require the General Assembly, which in terms exists for two years, to hold regular sessions in each year.

What, then, is the effect of this upon the proper construction of the provision of Article III, Section 18, that "No bill shall become a law after final adjournment of the General Assembly, unless approved by the Governor within thirty days after such adjournment"?

In our answer to the different but related question upon which you desired our opinion (see 175 *A.* 2d 405), we pointed out that Article III, Section 18, clearly distinguishes between "adjournment" and "final adjournment", and we stated that the first use was broader in meaning than the second, and in fact encompassed a temporary or interim adjournment of the house originating a bill, which act prevented its return to the originating house by the Governor with his objections. This, of course, applies to the provision of Article III, Section 18, granting a power of veto over legislation providing the bill is returned by the Governor within ten days to the originating house with his objections to the bill. This provision is, however, distinct and separate from the provision of Section 18 providing that after "final adjournment" no passed bill shall become law unless approved by the Governor within thirty days.

"Final adjournment of the General Assembly" must necessarily mean something beyond the temporary ceasing of legislative sessions. The adjective "final" is defined as "not to be altered or undone; conclusive" (*Webster's 3rd Int. Dictionary*), which necessarily, when describing an adjournment of "the General Assembly" can relate only to that adjournment following which the General Assembly will not be recon-

vened, either by operation of law or by its own act. It thus follows, since two regular sessions are now required by Article II, Section 4, that "final adjournment" of the General Assembly means the adjournment *sine die* of the second regular session, or, in the absence of such adjournment, the extinguishment of the particular General Assembly by reason of expiration of the terms of office of the members, whichever is earlier in point of time.

The 1959 amendment creates a condition which would have been impossible under the original Constitution. Prior to the 1959 amendment to Article II, Section 4, the Constitution provided for only one biennial regular session of any General Assembly. Thus, it was that prior to 1959 the final adjournment of the General Assembly was the adjournment *sine die* of the regular biennial session which, absent a call by the Governor into special session, was the only occasion that particular General Assembly would meet. Prior to 1959, therefore, the meaning of the phrase "final adjournment" was clear to a certainty.

When Article II, Section 4 was amended no corresponding change was made in Article III, Section 18, though changes were made in other sections, apparently to make them conform to the new requirement of annual sessions of the General Assembly (see Amendments to Article II, Sections 7 and 24). The result was, therefore, to leave unchanged Article III, Section 18, which provides that no bill shall become law without the approval of the Governor within thirty days of that adjournment of the General Assembly, after which it would never again be in regular session. Under the present constitutional provisions, that can only be the final adjournment of the second regular session.

We recognize the result that may follow from this conclusion. For example, with respect to the several bills occasioning the first question we have already answered, it is apparent that Your Excellency may, by your approval within

thirty days of the adjournment *sine die* of the second regular session, or expiration in office of the present General Assembly, enact these bills into law. That this is a possible result, however, does not change the clear meaning of the Constitution.

Furthermore, if the phrase "final adjournment" were confined to the end of the prescribed regular session it would necessarily follow that each regular session, of itself, constituted a General Assembly. What, then, would result, we ask, following the adjournment *sine die* of the first regular session an appreciable time before the second regular session is to convene? There would be a hiatus during which there would be no General Assembly in legal existence. Yet, Article II, Section 1, of the Constitution clearly contemplates for a two-year period the continuous existence of a General Assembly.

Article III, Section 18, referring as it does to the final adjournment " of the General Assembly" must be taken to mean what it so clearly says, *i.e.*, the final adjournment of the General Assembly of the last regular session, after which it will not again be in session except by reason of the call by the Governor into special session.

The answer to Question No. 1, therefore, is that "final adjournment" as used in Article III, Section 18, means the final adjournment at the end of the regular session of the General Assembly convening in even numbered years.

*Question No. 2*

We have pointed out that the 1959 amendment to Article II, Section 4, has directed that the General Assembly of Delaware shall meet in annual regular session throughout its life of two years. We think the General Assembly, itself, has recognized this fact by the enactment of 29 *Del. C.* § 701, providing for a method of designating its sessions. The situation is, therefore, exactly comparable to that of the Congress of

the United States, which has a life of two years, and is required to convene at least once in each of those years.

The precise question is whether bills and resolutions introduced in the first regular session and not passed at that session are automatically continued on the calendar of the second regular session, or whether they die with the expiration of the first session and must be reintroduced at the second regular session. We think that, as in the Congress of the United States, bills and resolutions introduced in the first regular session of the General Assembly, at the expiration of that session remain on the calendar which thereupon becomes the calendar of the second regular session. It follows, therefore, that all bills and resolutions pending before the first regular session are likewise pending before the second regular session when it convenes.

This, however, does not mean that merely because a bill or resolution is pending before the first regular session that it may, by means of that fact, be called up and passed at the second regular session. This is so because of the limitation of Article II, Section 4, upon the subject matter which may legally be acted upon at a second regular session. That limitation is that at a second regular session the "General Assembly shall consider no bills other than (1) bills having to do with budgetary, revenue and financial matters, (2) legislation dealing with an acute emergency, and (3) legislation in the general public welfare."

It will be noted that this limitation on the power of the General Assembly at its second regular session is absolute. Accordingly, at its second regular session the General Assembly may consider only bills, whether carried over from the first session or newly introduced, which fall within the three permissible categories. If the subject matter of an enacted bill does not fall within one or more of these categories, we have no doubt but that it would be illegally enacted if passed at the second regular session.

In closing, we take the liberty of referring to a further provision of the Constitution concerning which you have not asked our opinion. We have pointed out that the Constitution provides for a General Assembly with a life of two years, with the requirement that it meet in annual session. Prior to the amendment requiring annual sessions, Article II, Section 7, provided for the biennial organization of the Senate and House. At the same time, however, as Article II, Section 4, was amended to require annual sessions, Article II, Section 7, was amended to require the Senate and House to organize at each annual session. We are of the opinion, therefore, that upon convening in the second annual session, each House of the General Assembly must again organize in accordance with Article II, Section 7.

Respectfully submitted,

C. A. SOUTHERLAND
Chief Justice

DANIEL W. WOLCOTT
Associate Justice

WM. DUFFY
Judge