In the Matter of the Appeal of Riverton Valley Electric Association, Inc., from an Order of the Public Service Commission of Wyoming, dated August 2nd, 1961.

RIVERTON VALLEY ELECTRIC ASSOCIATION, Appellant (Petitioner below),

v.

PACIFIC POWER AND LIGHT COMPANY, Appellee (Protestant below).

No. 3183.

Supreme Court of Wyoming.

April 17, 1964.

Donald Spiker, of Spiker & White, Riverton for appellant.

W. J. Wehrli, Casper, for appellee.

Richard E. Day, Special Asst. Atty. Gen., appearing as amicus curiae, submitted the

matter on brief and oral argument, for the Public Service Commission of Wyoming.

Before HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

This is an appeal by Riverton Valley Electric Association, Inc., from a judgment of the district court confirming an arbitration award made by the Public Service Commission of Wyoming to settle a controversy between appellant and Appellee, Pacific Power and Light Company, over electrical utility service areas in Fremont County, Wyoming. Both parties are public utilities subject to regulation by the Commission.

The controversy came about in this way. Over the years appellee, or Mountain States Power Company its predecessor in interest, obtained Certificates of Public Convenience and Necessity from the Commission authorizing the construction, maintenance, and operation of facilities for the sale and distribution of electricity in the towns and environs of Lander, Riverton, Pavillion, Fort Washakie, and the communities of Arapahoe and Morton. In 1929, it also obtained such a certificate for an area containing approximately 775 square miles generally described by the Commission as an "oval area" embracing lands lying within a distance of ten miles on each side of its transmission line running between Lander and Riverton, exclusive of the Hudson area. Appellee also has rights in other areas in the county, but the foregoing are the areas that enter into the dispute.

Appellant was organized soon after passage by Congress of the Rural Electrification Act of 1936. Its purpose was to obtain the benefits of the Act and to render an electrical service to members and consumers in the rural areas of Fremont County, Wyoming. By the year 1943, appellant had constructed and energized approximately 290 miles of transmission lines and was rendering service to 512 customers. It had not previously obtained authority for its operations from the Commission, but following a decision of this court in Rural Electric Co. v. State Board of Equalization, 57 Wyo. 451, 120 P.2d 741, 122 P.2d 189 (decided January 5, 1942), wherein it was held that such organizations were public utilities under our statutes, appellant made application to the Commission for a Certificate of Public Convenience and Necessity. The service area sought by appellant was quite extensive and the greater portion of the territory involved had not theretofore been certificated by the Commission to any electrical utility. It did, however, include the so-called "oval area" previously certificated to Mountain States Power Company and the Hudson area previously certificated to Hudson Light and Power Company. As a result, both companies protested the granting of any rights to appellant that would interfere. After hearing, the Commission, even though recognizing the possibility of future conflict, granted a certificate to appellant for the service area requested, subject to the following limitations:

"* * * except the towns of Riverton, Hudson and Lander and their environs * * * and all rural customers, properties and premises now being served by the Mountain States Power Company or the Hudson Light and Power Company * * *."

and:

"* * * that this Certificate of Public Convenience and Necessity is issued to Riverton Valley Electric Association, Incorporated, without prejudice to existing Certificates held in Fremont County, Wyoming, by Mountain States Power Company and Hudson Light and Power Company."

In a subsequent proceeding initiated by appellant before the Commission for amendment of its certificate, the foregoing restrictions were restated and somewhat amplified by the Commission in its order of September 14, 1951. At the expense of some repetition, we quote the provisions

pertinent to the potential conflicting areas, which read as follows:

"(a) Without prejudice to any of the rights of Mountain States Power Company under its existing Certificates of Public Convenience and Necessity.

"(b) That applicant shall not interfere with the rights of Mountain States Power Company to serve the towns and communities, properties, premises and customers now being served by it, including the environs of such towns and communities.

"(c) That in all cases of new and additional customers desiring service and capable of being served from the lines of either applicant or Mountain States Power Company, such customers shall be served from the most economical and feasible source, either as agreed upon between said parties or, in the event of disagreement, as determined by the Commission.

"insofar as said territory duplicates or overlaps territory now held by Mountain States Power Company under Certificates of Public Convenience and Necessity heretofore issued to it by the Commission."

The foregoing limitations on appellant's authority have not since been modified, and despite the obvious potential for dispute no serious difficulty seems to have been encountered between the parties until early in the year 1961. By that time both were rendering service in areas outlying the towns of Lander and Riverton, and those areas were fast becoming focal points of dispute in the acquisition of new consumers. Some effort was made amicably to settle the matter, but this came to an end when appellee in March 1961 commenced the construction of a distribution line north of Lander for a distance of some two miles and another west for approximately the same distance.

After a preliminary skirmish in the trial court over the Lander extensions, appellant on March 24, 1961, filed with the Commission an application to clarify existing rights of each of the parties in the disputed certificated areas, and in substance asked the Commission to remove any such source of conflict by amending the certificates involved to the extent necessary to award and assign specific service areas to each of the parties. Before any action was taken on the application, the Commission invited the parties informally to meet with it and explore the possibility of reaching mutual agreement. The meeting was held, and when it became apparent that the parties' differences could not be reconciled, the Commission suggested resort to arbitration under the special power of the Commission, rather than proceeding formally upon appellant's application. The statute conferring power on the Commission to arbitrate is § 37–12, W.S.1957, and states as follows:

"Whenever any Wyoming public utility has a controversy with any other person and all the parties to such controversy agree in writing to submit such controversy to the commission as arbitrators, the commission may act as such arbitrators, and after due notice to all parties interested may proceed to hear such controversy, and their award shall be final."

Adopting the Commission's suggestion, the parties by separate instruments submitted the controversy for arbitration. The submission of appellant was in keeping with the request made in its application, and it was therein stated that appellant "consents that the Commission shall make its award in writing and that it shall be [sic] to the undersigned and Pacific Power & Light Company be final." Appellee's submission tendered the same subject matter as appellant, and interjected also "additional comparatively small areas in Fremont County in which one corporation or the other are [sic is] now serving consumers and which are wholly or partially isolated from the separately certificated area of the corporation rendering such service." No objection was made by appellant to the

inclusion of appellee's proposal, and it was at all times treated as embraced within the submission of the parties.

In carrying out its function as arbitrator, the Commission held two separate hearings at which the parties were afforded opportunity to present evidence and submit their respective proposals and contentions. In addition, the Commission, together with members of its staff, and with the parties' consent, made physical inspection of the areas and the properties and facilties involved. Following this it made in writing the "ARBITRATION AWARD" so vigorously assailed by appellant. We deem it unnecessary here to recite the many details considered and settled by the award. Suffice it to say that it contains a rather complete discussion of the respective rights of the parties, the problems involved, the proposals of the parties for settlement, the contentions of the parties, and the evidence presented. Findings were made and it was ordered that one or the other of the parties withdraw from certain specifically defined areas; that the certificates of the parties be amended and limited accordingly in order to assign to each exclusive and specific service areas; that the parties work out an amicable exchange of customers in the affected areas; that studies and reports be made to the Commission for disposal, sale, or exchange of plant facilities necessitated by the award; and, subject to guidance and assistance from the Commission, the parties were directed and authorized to consummate all matters necessary to accomplish the purposes of the award.

Thereafter, appellant filed a motion for rehearing with the Commission, which was denied. Following this, the appellant, pursuant to the statutory provisions prescribing the manner and method of appeal from orders of the Commission to the district court (§ 37–45, W.S.1957), filed in said court its "PETITION OF APPEAL." The relief sought was to vacate and set aside the arbitration award or in the alternative: (a) to remand it to the Commission with instructions "to rehear the matter, and make specific findings and conclusions from the evidence adduced before the Commission, and identify the evidence it relies upon in reaching its conclusions as required by law"; or (b) modify and restore to appellant certain specific areas of which it had been deprived. Appellant alleged several grounds for its basis of appeal, some of which were stricken on motion, and those now before us are that the Commission acted without and in excess of its powers; that the award is not in conformity with law; and that the findings of fact are not supported by substantial evidence.

The judgment entered by the district court affirming the award recites that no charge was made by appellant of fraud or misconduct on the part of the arbitrator and no such evidence was offered. The court also found adversely to all of appellant's contentions.

■ The first question confronting us is the attack by appellee and the Commission as amicus curiae on the jurisdiction of the district court. It is contended that the court was without authority to entertain the appeal taken by the appellant under the general provisions for appeal from orders of the Commission as prescribed in § 37–45. In fact, it is argued that there can be no appeal under any circumstance for the reason that the provisions of § 37–12, relating to an arbitration proceeding, do not grant a right of appeal, and actually deny it by the provision that the award of the Commission "shall be final." There is no direct constitutional requirement for appeal from an award in voluntary arbitration. Art. 19, § 8, Wyo.Const. Absent such requirement, the right does not exist unless expressly conferred by statute. Mau v. Stoner, 14 Wyo. 183, 83 P. 218, 219. No such right is contained in the provisions of § 37–12. Under those circumstances, whatever significance is to be accorded the term "shall be final" on the question of appeal must be directed toward the general provisions for appeal.

■ On this phase we are cited to many authorities, including Mau v. Stoner, supra, at 83 P. 221, recognizing the rule that where the legislature provides that a decision rendered by an inferior tribunal on a matter entrusted to it shall be "final," "conclusive," or uses terms of similar import, the provisions will ordinarily be regarded as indicating a denial of the right of appeal. See also 36A C.J.S. Final, p. 408. The rule is sound and we would have no hesitancy again to apply it in a proper case. However, as demonstrated in Weidenhoft v. Primm, 16 Wyo. 340, 94 P. 453, 456, decided soon after the Mau case, it can be seen that use of such expressions is not always controlling. Consideration of the subject matter to which the statute pertains is of paramount importance in reaching a proper result. When that is done here we think the stress laid upon the word "final" loses much of its force. In the field of arbitration, words such as "final," "finality," "conclusive," and "binding" are of common usage. Invariably, however, these expressions are directed to the requirements of the proceeding and the nature of the award to be made. 5 Am.Jur.2d, Arbitration and Award, §§ 96, 124, and 142. Absent some legal infirmity, there can be no doubt that an award made under a submission or a statute, or both, unless otherwise provided, is final and conclusive as to the parties. 5 Am.Jur.2d, Arbitration and Award, § 146. However, to go beyond that and hold that by use of the word "final" the legislature intended to shield the proceeding from scrutiny by the courts is a different matter. Challenge of an arbitration award under the common law, or under statutes similar to our Uniform Arbitration Act, Ch. 116, S.L. of Wyoming 1959, although limited in extent, has always been available. Without more appearing than that the award "shall be final" we are not disposed to attribute to the legislature an intention to deprive parties of such a valuable right. Nevertheless, there remains the question of whether or not a right of appeal was granted by the general provisions of § 37–45. We are persuaded that it was not.

■ Arbitration as a mode for voluntary final settlement of disputes in an inexpensive and expeditious manner without resort to a tribunal, conducted with rigid formality under strict rules of law, has long been embedded in the public policy of this state. Art. 19, § 8, Wyo.Const.; Ch. 60, S.L. of Wyoming 1886; Ch. 96, S.L. of Wyoming 1927; Ch. 116, S.L. of Wyoming 1959. In fact, the statute before us, which our investigation discloses is unusual in the body of law regulating public utilities, is nothing more than an extension of such policy into this special field of regulation. In essence, it creates a special tribunal for such purposes over which the members of the Commission are designated and authorized to preside. Such statutes are generally favored by the courts "as a short cut to substantial justice." 5 Am.Jur.2d, Arbitration and Award, § 5. We have not departed from that policy in the past. Oil, Chemical & Atomic Workers Union, Local 2–230 v. Great Lakes Carbon Corporation, Wyo., 376 P.2d 640; and Waisner v. Waisner, 15 Wyo. 420, 89 P. 580, 582, 123 Am.St.Rep. 1081. Consequently, we would indeed be reluctant to give to § 37–45 any interpretation that would tend to circumvent and frustrate the obvious purpose for which § 37–12 was enacted. As stated by Judge Learned Hand in the oft-quoted case of American Almond Products Co. v. Consolidated Pecan Sales Co., 2 Cir., 144 F.2d 448, 451, 154 A.L.R. 1205, it will not do to "hedge it about with those procedural limitations which it is precisely its purpose to avoid." Such a result would inevitably follow were we to hold that by § 37–45 the legislature intended a review on appeal of an award under § 37–12 to be coextensive with an appeal from decisions rendered by the Commission in compulsive adversary proceedings instituted by formal complaint or on the Commission's own motion. This for the reason that the general appeal statute, § 37–45, while also limiting the court's

powers on review, goes far beyond the limitations of a common-law or statutory review of the usual arbitration award. We conclude, therefore, that it was not the intention of the legislature to inject the advantages of voluntary arbitration into the regulation of public utilities and then proceed immediately by later provisions in the same Act severely to curb its effectiveness. Thus, we agree that the appeal here was improvidently taken and the trial court erred in entertaining it as an appeal. We do not hold, however, that the district court was wholly without jurisdiction to proceed.

As stated above, an arbitration award in a common-law proceeding was always subject to challenge, although on limited grounds. Some of the grounds were stated by us in the Waisner case, but for a succinct summary of the general rule, supported by abundant authority, we quote briefly from Gramling v. Food Machinery and Chemical Corporation, D.C.S.C., 151 F. Supp. 853, 857, which states:

"At common law, an award of arbitrators can be set aside, in the absence of an agreement not to appeal, upon four grounds, and only four. They are: (1) Corruption; (2) Misbehavior amounting to partiality; (3) Excess of authority; and (4) Such palpable mistake of facts as to satisfy the court that, if it had not been made, the decision of the arbitrators, *according to their manifest intent*, would have been different. * * *" (Italics in original.)

We mention these principles for the reason that even though the proceeding here was conducted under a special statute that failed to prescribe a mode of procedure for challenge of the award in the courts, it likewise failed to indicate an intention to abolish or supersede the common-law remedies available for that purpose. Under those circumstances and with no inconsistency resulting, it is clear that the award under the law prevailing in this jurisdiction was subject to review under the common-law rule in an appropriate proceeding. Section 8–17, W.S.1957. Necessarily, this raises the further question of whether or not the proceedings in the trial court were sufficient to sustain jurisdiction on such grounds.

We discussed facets of the problem in Oil, Chemical & Atomic Workers Union, Local 2–230 v. Great Lakes Carbon Corporation, supra, which involved another statute. There a proceeding to challenge an award was initiated by motion. The only facts before the court pertaining to the controversy were those recited in the award. Respondent entered no general appearance and throughout the proceeding objected strenuously to the jurisdiction of the court, except for the limited purpose of ruling on the motion. Its objection was overruled and, after hearing, the trial court proceeded to vacate the award. On appeal it was argued by movent that the motion filed could be treated as a complaint and as such was sufficient to sustain jurisdiction. However, under the circumstances existing and the fact that respondent would be prejudiced thereby, it was held that the motion was insufficient for such purposes. But the circumstances of that case are entirely different from the instant case.

Here an extensive pleading was filed. True, it was entitled "PETITION ON APPEAL" in keeping with the provisions of § 37–45. It also contained several allegations that were pertinent only to an appeal, and sought alternative relief beyond the power of the court to grant. Oregon-Washington R. & Nav. Co. v. Spokane, P. & S. Ry. Co., 83 Or. 528, 163 P. 600, 606, Ann.Cas.1918C, 991, rehearing denied 83 Or. 528, 163 P. 989; and 5 Am.Jur.2d, Arbitration and Award, § 188. Nevertheless, as a part of its claim for relief, appellant in substance alleged misbehavior on the part of the arbitrator; alleged that the arbitrator acted without and in excess of its authority; alleged that the arbitrator palpably mistook the facts; and prayed that the award be vacated and set aside. From this it is quite apparent that

if the title of the pleading and the immaterial matters are disregarded, the pleading still contains sufficient to invoke the general equitable powers of the court and initiate the proceedings. Padlock Ranch v. Washakie Needles Irr. Dist., 50 Wyo. 253, 60 P.2d 819, 61 P.2d 410. Upon the filing of the pleading, a copy, together with a summons, was served on appellee. Appellee then moved to dismiss for failure to state a claim, for lack of jurisdiction over the subject matter, and for summary judgment. After hearing, the motions were denied. Appellee then answered and the issues were joined. The entire record made in the arbitration proceeding, including the evidence, was brought before the court. There is every indication in the record that the issues made up were fully presented. The fact that the court at the insistence of appellant considered and decided issues beyond the narrow limits of the proper rule in no way prejudiced appellant. Consequently, we conclude on the authority of Walther v. Steward, 54 Wyo. 160, 88 P.2d 475, 479, that the title to the pleading here should be disregarded and treated as a complaint for equitable relief from the award. When so regarded, it is clear that the district court had jurisdiction.

With the foregoing in mind we turn to the contentions urged upon us by appellant as grounds for nullifying the award. Understandably, its counsel's brief is devoted largely to principles within the purview of an appeal under § 37–45. Perhaps its position is best summarized by this statement from its brief:

"* * * 'arbitration' was nothing more than a 'hearing' and that this matter is governed by the same rules that would govern any other hearing before the Commission and any other Order made by the Commission upon such hearing."

It is true that certain of those principles are applicable and will be considered. However, for obvious reasons, we are not in agreement with counsel's insistence that in this arbitration proceeding the Commission will be held to the same high standards of judicial conduct required in an adversary proceeding. Any such approach would frustrate the very purpose of the submission. Of course, certain fundamental requirements are present in either proceeding. For example, § 37–12 anticipates a proceeding in the nature of a judicial inquiry in that it requires a submission in writing, notice, and a hearing affording the parties an opportunity to present evidence and to cross-examine witnesses. Nevertheless, "the standards of judicial conduct and efficiency to which a panel of arbitrators will be held are markedly different from those resting by law and tradition upon judicial officers." Northern State Construction Company v. Banchero, Wash., 386 P.2d 625, 627.

Another important factor not to be overlooked is the terms of the submission. Other than the foregoing requirements, neither the statute nor the terms of the written submission reserved to the parties the right to insist upon strict adherence to all of the niceties of a judicial proceeding. It will scarcely do to permit appellant first to resort to the quasi-judicial arm of the Commission to clarify existing rights of the parties in the disputed certificated service areas, and amend the certificates accordingly in order to remove the sources of dispute; to abandon that proceeding and submit the entire matter to arbitration; and, upon dissatisfaction with the result, to simply ignore the consequences of the submission. See Annotation 112 A.L.R. 873. Most of appellant's contentions are of that nature.

Illustrative is the contention that the award is a nullity for failure of the Commission to state reasons for the award. We think it did, but even so no such requirement was imposed. That is true also of the complaint that the Commission failed to make detailed findings and set forth clearly the evidence upon which it relied. Pacific Vegetable Oil Corporation v. C. S. T., Limited, 29 Cal.2d 228, 174 P.2d

441, 444; In re Curtis, 64 Conn. 501, 30 A. 769, 770–771, 42 Am.St.Rep. 200; Mangum v. Mangum, 151 N.C. 270, 65 S.E. 1004–1005; and 5 Am.Jur.2d, Arbitration and Award, § 126. In making these contentions appellant has relied upon Gore v. John, 61 Wyo. 246, 157 P.2d 552. The discussion there was prompted by specific requirements of the statute. Rather than lending support to appellant, it demonstrates what we are endeavoring to point out.

Appellant complains of the quality and sufficiency of the evidence to support the award. Much of the argument is directed to the provisions of another statute which will be discussed, but again we cannot agree with counsel's contentions. The ready answer is that under the submission, unlimited except as noted above, and absent a mistake upon the evidence tantamount to fraud as in Waisner v. Waisner, 15 Wyo. 420, 89 P. 580, 582, 123 Am. St.Rep. 1081, or willful and intentional failure to consider it, the weight and sufficiency of the evidence was for the Commission. Puget Sound Bridge & Dredging Co. v. Lake Washington Shipyards, 1 Wash. 2d 401, 906 P.2d 257, 261; Koepke v. E. Liethen Grain Co., 205 Wis. 75, 236 N.W. 544, 545; Annotation 112 A.L.R. 873; and 5 Am.Jur.2d, Arbitration and Award, § 122. We have examined the record with care and find no evidence of misconduct in this regard. However, we need not dispose of the contention on that narrow ground. Actually, the Commission held extended hearings. No complaint is made that appellant was hampered in presenting its evidence and presumably it introduced all of the evidence it had on the questions before the Commission. In addition, the Commission, accompanied by representatives of the parties, viewed the service areas in dispute and inspected the facilities involved. Augmenting this is the fact that the legislature, in providing that members of the Commission would preside in arbitrations under the statute, no doubt intended that they make use of their special fitness and knowledge in this field in a manner supplementary to such facts as were established by evidence. American Almond Products Co. v. Consolidated Pecan Sales Co., 2 Cir., 144 F.2d 448, 450, 154 A.L.R. 1205; Sapp v. Barenfeld, 34 Cal.2d 515, 212 P.2d 233, 238–239; and 5 Am.Jur.2d, Arbitration and Award, § 94. As we view it, there was ample in the record to sustain the award, and we are pointed to no evidence conclusively establishing a mistake of fact appearing on the face of the award.

The principal contention of appellant approached in different ways is that the award contravenes the powers of the Commission under the provisions of § 37–31, W.S.1957, relating to Certificates of Public Convenience and Necessity regulating the rendition of utility service in specific areas, and that because of such conflict the Commission exceeded its authority as arbitrator. If the contention is sound the award was a nullity. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 186, 98 L.Ed. 168. The contention relates almost entirely to the areas surrounding the towns of Lander and Riverton and lying outside the corporate limits. The record shows that over the past twenty years there was substantial growth in population and industry in the towns and in the surrounding areas, and this in turn was the chief source of controversy between the parties and was the area presenting the greatest difficulty to the Commission. It cannot be determined with any exactness from the record the number of customers therein served by each of the parties and the number lost because of the award, but for purposes of argument appellant maintains that it stands to lose some 251 customers in the area from which it received gross revenues of approximately $36,000.00. The Commission, for its purposes, declined to accept these figures because of conflict in the evidence, and consequently we will not do so. Further than this some inaccuracy results for the reason that under the award made appellant retained a substantial portion of the customers and area that it was then serving. Nevertheless, its contention is that the Commission

was without authority to deprive it of any customers or rights in the area involved. The argument is premised on the proposition that the certificate awarded appellant in 1943 granted this area to appellant as its exclusive service area with the exception of those customers then being served by Mountain States Power Company, and under the statute it cannot now be ousted without a proper showing by appellee that adequate service was not being rendered by appellant and that public convenience and necessity required that appellee render that service.

 The argument in the first instance, as we view it, is based on an assumption unsupported by the record. In addition to the reservation made in the order underlying issuance of the certificate to "all rural customers, properties and premises now being served by the Mountain States Power Company" it also specifically excepted from the grant the environs of Lander and Riverton and further provided that the grant made was without prejudice to existing certificates held by Mountain States Power Company. We would agree that the language of the order is somewhat inept in its specificity, but the clear import is that it did not grant to appellant the exclusive rights for which it now contends. Appellant undertakes to overcome the infirmity by advancing that the language of the order does not reflect the stipulations of the parties upon which the order was based, and that inasmuch as the stipulations were in accord with its present contention the order must be construed accordingly. The argument is hardly consistent with the position taken by appellant at the time application was made formally to amend the certificates of the parties specifically describing respective service areas and the admission of its manager, Mr. Zenor, that the rights of the parties in the area were in the nature of a "fishing license." In final analysis, however, if it is true that the order of the Commission was in error, it should have been corrected at that time. Clearly, the Commission under § 37–31 was authorized to impose just and reasonable conditions, and if the certificate in the form tendered was not acceptable to appellant it should have been rejected and further steps taken at that time to have it clarified. In this connection appellant complains of the interpretation placed upon the term "environs" by the Commission. It is suggested that the broad meaning accorded the term is not in keeping with our holding in Svilar Light and Power, Inc. v. Riverton Valley Electric Association, Inc., Wyo., 355 P.2d 52, 56. Of course, in the Svilar case we were dealing with a certificate conditioned on "immediate vicinity" and not "environs." There the Commission construed "immediate vicinity" to embrace an area within one-half mile of the Town of Hudson and we simply held on the record made that such interpretation was reasonable. Here the circumstances and the term are entirely different. The Svilar case was decided by the Commission in an adversary proceeding and came before the court for review on appeal. Here the parties have bargained for interpretation of the term by the Commission as arbitrator. So far as we can find, courts have not undertaken to define the term with exactness, even though as pointed out by the Commission it is of common usage in issuance of Certificates of Public Convenience and Necessity. Under the circumstances, we are not inclined to interfere with the interpretation for which appellant bargained. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 1362, 4 L.Ed.2d 1424; and 63 Harv.L.Rev. 681, 686 (1950). Thus, the premise of appellant's argument as to exclusive rights in the area having failed, its argument that the Commission was without authority to amend its certificate under § 37–31, depriving it of portions of the area without the showing by appellee of the matters suggested, must likewise fail.

 It can hardly be questioned that under § 37–31 the Commission is empowered to amend Certificates of Public Conven-

ience and Necessity and we so held in the Svilar case. It is also clear that the Commission, keeping in mind the paramount public interest, may effect amendments upon agreement of the parties involved, and as we view it there is nothing inherently wrong in solving the matter by arbitration. The legislature provided a procedure for arbitration of disputes in utility matters, and it is generally accepted that parties may voluntarily agree to submit to arbitration rights created by statute as well as those arising by contract or common law. United States for Use and Benefit of Industrial Engineering & Metal Fabricators, Inc. v. Eric Elevator Corporation, D.C.Mass., 214 F.Supp. 947, 948.

Further complaint is made concerning the reasonableness of the details of the award realigning service areas of the parties, removing conflicts and sources of conflict, and fixing with particularity the areas in which each party would have exclusive rights in the future. Perhaps we can best illustrate the nature of the complaints by referring briefly to the provision transferring certificates of appellee to appellant for the town of Pavillion and the communities of Arapahoe and Morton. These were in part the isolated areas to which appellee referred in its submission as being surrounded by appellant's exclusive area and wherein appellee was rendering service to some 105 customers. Conversely, certain rights of appellant in the more densely populated and prospective growth areas surrounding Lander and Riverton, in which appellant was rendering service, were transferred to appellee. There are, of course, other offsetting factors bearing upon the exchange, but appellant's position is that in any event such an exchange was wholly unfair and inequitable.

It may well be that had the Commission pursued some other course a result more palatable to appellant would have been achieved. However, the solution of the problem was the very matter which had been submitted to the Commission for arbitration, and so far as the record before us is concerned there is no showing that the Commissioners did not exercise their best judgment in working out an exchange of area, customers, and facilities. It is not for us to inquire into the merits. Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corporation, D.C.N.Y., 184 F. Supp. 116, 117, affirmed 2 Cir., 274 F.2d 805, certiorari denied 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727; Pacific Vegetable Oil Corporation v. C. S. T., Limited, 29 Cal.2d 228, 174 P.2d 441, 445; and Edwards v. State, 72 Fla. 264, 73 So. 188, 190. Justice Grier stated many years ago, in Burchell v. Marsh, 17 How. 344, 351, 58 U.S. 344, 351, 15 L.Ed. 96, that "If they [arbitrators] have given their honest, incorrupt judgment on the subject-matters submitted to them, after a full and fair hearing of the parties, they are bound by it; and a court of chancery have [sic has] no right to annul their award, because it thinks it could have made a better."

In conclusion, it was appellant's burden to show by clear and convincing evidence that the award was obtained by fraud, corruption, behavior beyond the bounds of natural justice, excess of authority, or a manifest mistake of fact or law appearing upon the face of the award to which reference was made in Waisner v. Waisner, supra, and Oil, Chemical & Atomic Workers Union, Local 2–230 v. Great Lakes Carbon Corporation, Wyo., 376 P.2d 640. See also 5 Am.Jur.2d, Arbitration and Award, §§ 167 and 186. From what we have said above we are of the opinion that appellant has failed to sustain its burden and that the trial court did not err in entering judgment affirming the arbitration award.

Affirmed.

PARKER, C. J., not participating.