PUNDT AGRICULTURE, INC., Hagen & Son, and Individually, Arthur H. Pundt, Edward A. Pundt, Rudolph Hagen, Oren Hagen, Anna Moennich, and Ted Moennich, Appellants,

v.

IOWA DEPARTMENT OF TRANSPORTATION, Victor Preisser, State Director of the Department of Transportation, and Robert R. Rigler, Commissioner, Alan Thomas, Commissioner, and the Iowa Transportation Regulation Board, Conrad A. Amend, Jack W. Linge, and Karen Bellis, Appellees.

No. 63554.

Supreme Court of Iowa.

April 23, 1980.

Richard A. Pundt of Silliman, Gray & Stapleton, Cedar Rapids, and Philip B. Mears, Iowa City, for appellants.

Thomas J. Miller, Atty. Gen., Robert W. Goodwin, Sp. Asst. Atty. Gen., and Franklin W. Sauer, Asst. Atty. Gen., for appellee Dept. of Transp.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, ALLBEE and LARSON, JJ.

UHLENHOPP, Justice.

In this appeal we consider the propriety of a decision by the Iowa Department of Transportation (DOT) to construct Iowa Highway 149 on a diagonal route.

Plaintiffs are farmers who by various procedural devices challenged DOT's choice of the location for a highway to link the Amana Colonies with United States Interstate 80. On October 28, 1975, the Highway Division of DOT presented the DOT Commission with three alternative routes. The first route was designed for speeds of 60 miles per hour and followed an existing north-south right-of-way for virtually all of its 5.4-mile length. The second and third alternatives were designed for speeds of 70 and 60 miles per hour, respectively, and followed only part of an existing north-south right-of-way, breaking off on a northeast diagonal about midway between Interstate 80 and United States Highway 6. Each route was considered to be of safe design.

The Commission held a hearing. Several witnesses, including plaintiffs, the DOT Director, and the Iowa County Engineer, expressed their preference for the first route. Nevertheless on December 2, 1975, the Commission adopted the 70 mile-per-hour diagonal route, which was more direct and had fewer access points, flatter slopes, and a more level grade. It would however be the most expensive of the three routes and would take the most land out of production.

On July 26, 1976, plaintiffs filed a contested-case complaint with DOT challenging its selection of the diagonal route. The Transportation Regulation Board (TRB) held hearings on the complaint on December 20 and 21, 1977, and January 18, 1978. Most of the evidence presented at the original hearing was introduced again. On February 28, 1978, TRB ruled that the DOT Commission had no jurisdiction to determine the location of the highway because the authority to do so was vested in the DOT Highway Division, and remanded the case to that Division for its action. During March, however, two of the three members of TRB were replaced, and when the DOT Commission petitioned for rehearing the newly-constituted TRB granted rehearing, reversed the earlier jurisdictional ruling, and directed the DOT Commission to proceed with the planning and construction of the new highway. Plaintiffs then requested a rehearing which was denied.

The various plaintiffs next filed petitions in district court challenging TRB's rulings. The district court consolidated the plaintiffs' cases and in rulings on February 27, 1979, and April 19, 1979, upheld the DOT Commission's decision of December 2, 1975, and TRB's affirmance of that decision. Plaintiffs thereupon appealed to this court, asserting among other things the Commission's failure to apply section 306.9 of the Iowa Code and the Commission's lack of jurisdiction to render its decision of December 2, 1975.

I. *Applicability of section 306.9 to Highway 149 project.* Section 306.9 of the Code expresses the General Assembly's desire to

protect this state's farmland in the relocation of primary highways. It provides:

It is declared to be the policy of the state of Iowa that relocation of primary highways through cultivated land shall be avoided to the maximum extent possible. Whenever the volume of traffic for which the road is designed or other conditions require such relocation, diagonal routes shall be avoided wherever feasible and prudent alternatives exist.

It is further declared that improvement of two-lane roads shall utilize the existing right-of-way unless alignment or other conditions make changes imperative, and when any two-lane road is expanded to a four-lane road, the normal procedure would be that the additional right-of-way would be contiguous to the existing right-of-way unless relocated for compelling reasons. This policy shall not apply to any highway project for which the corridor has been approved by the state department of transportation and which corridor has been finalized by September 1, 1977.

The district court ruled that this language does not apply to the relocation of Highway 149 under the present facts.

Plaintiffs contend that the preference expressed in section 306.9 should be applied in this highway project. They claim that the last sentence of that section does not apply to exempt the project, that is: "This policy shall not apply to any highway project for which the corridor has been approved by the State Department of Transportation and which corridor has been finalized by September 1, 1977." They say that the decision on where to relocate Highway 149 was not "finalized by September 1, 1977," as that sentence requires. They urge us to construe "finalized" in section 306.9 to mean "no longer subject to appeal, either administratively or judicially."

Several arguments tend to support plaintiffs' construction of the statute. First is the plain meaning of the term "finalized." The first sense of the term "final" as it is defined in Webster's Third New International Dictionary (1971) is "not to be altered or undone. . . . ." The term "final," in its ordinary sense, has been said to mean "last," *United States v. Tod*, 1 F.2d 246, 252 (2d Cir. 1924); *Standard Oil Co., New Jersey v. United States Court of Claims*, 10 F.Supp. 550, 560 (Cl.Ct.1935), "complete," *State Highway Commission v. McGowen*, 198 Miss. 853, 869, 23 So.2d 893, 897 (1945), and "ultimate," *Garrison v. Daugherty*, 18 S.C. 486, 488 (1882). In legal terminology the term "final" has been said to mean "conclusive," *Tod*, 1 F.2d at 252; *Standard Oil*, 10 F.Supp. at 560; *Opinion of the Justices*, 4 Storey 222, 54 Del. 222, 225, 175 A.2d 543, 545 (1961); *State v. Barns*, 119 Fla. 405, 423, 161 So. 568, 574 (1935); *Towle v. Yeaton*, 97 N.H. 427, 429, 90 A.2d 496, 498 (1952); *Riverton Valley Electric Association v. Pacific Power & Light Co.*, 391 P.2d 489, 495 (Wyo.1964), and as an unappealable judgment, *Tod*, 1 F.2d at 252; *Opinion*, 4 Storey at 225–26, 54 Del. at 225–26, 175 A.2d at 545; *Pittsburgh, Fort Worth & Chicago Railway Co. v. Gillespie*, 158 Ind. 454, 458, 63 N.E. 845, 846 (1902); *Hoste v. Dalton*, 137 Mich. 522, 525, 100 N.W. 750, 751 (1904); *Rondeau v. Beaumette*, 4 Minn. 224, 228 (1860); *Towle*, 97 N.H. at 429, 90 A.2d at 498; *Crowell Elevator Co. v. Kerr Gifford & Co.*, 114 Or. 675, 679, 236 P. 1047, 1050 (1925); *Riverton*, 391 P.2d at 495. See 36A C.J.S. *Final* at 408 (1961). Section 4.1(2) of the Code requires us to construe a word according to the "approved usage of the language," and by its technical or legal meaning if it has acquired one. The "approved usage" of "final" supports plaintiffs' construction of that term as used in section 306.9.

A second source of support for plaintiffs' construction is the manner in which courts of various jurisdictions have used the term when retrospectively applying a new principle of law. For example, in *Linkletter v. Walker* the issue was whether the exclusionary rule applied retrospectively to cases "finally" decided prior to *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961). See 381 U.S. 618, 619–20, 85 S.Ct. 1731, 1732, 14 L.Ed.2d 601, 603 (1965). The United States Supreme Court held that it did not but in reaching that result defined

the term final: "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition of certiorari had elapsed before our decision in *Mapp v. Ohio*." 381 U.S. at 622 n.5, 85 S.Ct. at 1734 n.5, 14 L.Ed.2d at 604 n.5. Several other courts have adopted the Supreme Court's manner of defining "final" for the purpose of determining whether a new principle of law applies retrospectively to a given case. *See, e. g., Pendergrast v. United States*, 416 F.2d 776, 782 n.31 (D.C. Cir. 1969); *People v. Kemp*, 10 Cal.3d 611, 111 Cal.Rptr. 562, 564, 517 P.2d 826, 828 (1974); *State v. Heath*, 222 Kan. 50, 54, 563 P.2d 418, 422 (1977); *State v. Holiday*, 182 Neb. 410, 411, 155 N.W.2d 379, 379 (1967); *In re Arlene "S"*, 63 Misc.2d 253, 255, 311 N.Y.S.2d 927, 929 (Fam.Ct.1970). These decisions support plaintiffs' construction of "final" as used in the statute before us.

The third argument in support of plaintiffs' construction is that it is consistent with intent clearly expressed by the legislature when it passed section 306.9. As chapter 306 was originally written, the policy expressed in section 306.9 was to apply only to corridor decisions not "finalized by the effective date of this Act." In May 1978, the Iowa House of Representatives changed this language so as to have section 306.9 apply to decisions not "finalized by September 1, 1977," the original date of the bill's passage. House Amendment 4024, H.J. 1941 (1977). The decision of the House to make section 306.9 apply retrospectively evidences an intent to make the policy expressed therein apply to more projects.

DOT argues for a narrower construction of "finalized" which would render section 306.9 inapplicable here. It asserts that its decision where to relocate Highway 149 was "final" when no further action was needed by the Commissioners on that issue. In support of this construction of section 306.9, DOT relies on section 17A.19 of the Iowa Administrative Procedure Act which requires that agency action be "final" before judicial review may be had. DOT apparently reasons that if agency action must be "final" under section 17A.19 before judicial

review may occur, then a decision to relocate a highway must be "finalized" under section 306.9 at the same time.

We reject DOT's interpretation of finalized in section 306.9 for the reason that it is inconsistent with the wording of the section. The last sentence of section 306.9 provides that "[t]his policy shall not apply to any highway project *for which the corridor has been approved by the state department of transportation and which corridor has been finalized* by September 1, 1977." (Emphasis added.) The General Assembly's use of the conjunctive "and" indicates it considered approval of a corridor by DOT *and* finalization of the corridor to be two things, whereas DOT's construction treats DOT approval of a corridor and finalization of that corridor as the same. That interpretation is contrary to the wording of section 306.9 and we reject it.

■ DOT's decision on where to relocate Highway 149 was not finalized as of September 1, 1977. Plaintiffs had filed a contested-case complaint with DOT on July 26, 1976, which was pending at the time section 306.9 was passed by the Iowa House of Representatives. Because Plaintiffs had not exhausted their appeal as of September 1, 1977, the Highway 149 decision was not finalized at that time. The district court erred in ruling that section 306.9 does not apply to the case at hand, and we must remand the case to DOT for reconsideration of the alternative routes in light of the policy expressed in that section.

II. *Does the DOT Commission or the DOT Highway Division select the location of highways?* Plaintiffs contend, contrary to the district court's ruling, that the General Assembly granted the authority to determine the location of highways to the DOT Highway Division rather than the DOT Commission. The validity of plaintiffs' contention depends on the powers expressly granted to those respective bodies by statute, as well as authority which arises from those powers by "necessary or fair implication." *See Howell School Board District No. 9 v. Hubbartt*, 246 Iowa 1265, 1273, 70 N.W.2d 531, 535 (1955).

In July 1974 the Iowa General Assembly combined what had previously been several independent agencies with transportation-related responsibilities into a single administrative unit called the Department of Transportation. The Highway Commission was one of the formerly independent agencies brought within the framework of DOT. The preamble to the Act which created DOT provides some insight into the purpose:

> WHEREAS, it is the public policy of this state that the general welfare . . can best be served by a coordinated transportation policy to assure adequate, safe, and efficient transportation facilities and services, and

> WHEREAS, in order to accomplish this goal, the general assembly finds that it is necessary . . . to combine and transfer the duties and functions of certain existing state agencies into a state department of transportation created by this Act, and

> . . . . .

> WHEREAS, the duties and responsibilities of the state highway commission should be transferred to the state department of transportation. . . .

1974 Session, 65th G.A., ch. 1180. The General Assembly provided in the body of the act for a DOT Commission to be comprised of seven members appointed by the governor. The specifically-delineated duties of the Commission are to:

1. Develop and coordinate a comprehensive transportation policy for the state . . . and develop a comprehensive transportation plan . . . and to update the transportation policy and plan annually.

2. Promote the coordinated and efficient use of all available modes of transportation for the benefit of the state . . . . .

3. Identify the needs for city, county, and regional transportational facilities and services in the state and develop programs appropriate to meet those needs.

4. Identify methods of improving transportation safety in the state and de-velop programs appropriate to meet these needs.

5. Adopt rules and regulations . . as it may deem necessary to transact its business . . . .

6. Approve the budget of the department . . . .

7. Approve the reorganization of any existing divisions within the department.

8. Consider the energy and environmental issues in transportation development.

9. Enter into such contracts and agreements as provided in this Act.

1974 Session, 65th G.A., ch. 1180, § 10. The same bill which established the Commission and gave it the duties listed above also transferred to the DOT Commission the duties that formerly belonged to the old Highway Commission under chapter 306 of the 1973 Code. Among those functions was the duty to

> [p]repare, adopt and cause to be published a long-range program for the primary road system, in conjunction with the state transportation plan adopted by the commission. . . . Before the last day of December of each year, the commission shall adopt and cause to be published from its long-range program, a plan of improvements to be accomplished during the next calendar year. This annual program shall list definite projects in order of urgency . . . . The relative urgency of the proposed improvements shall be determined by a consideration of the physical condition, safety, and service characteristics of the various primary roads.

1974 Session, 65th G.A., ch. 1180, § 70(13). The legislature defined the duties of the Highway Division of DOT—formerly the Highway Commission—as follows:

> The administrator of the highway division shall be responsible for the planning, design, construction, and maintenance of the state primary highways and shall administer the provisions of chapters three hundred six (306) through three hundred twenty (320) of the Code and perform

such other duties as may be assigned by the director. . . .

1974 Session, 65th G.A., ch. 1180, § 24.

▮ We agree with plaintiffs to the extent that the General Assembly empowered the Highway Division of DOT to make initial recommendations regarding the location of Highway 149. Such a role certainly falls within its responsibility "for the planning, design, construction, and maintenance of the state primary highways . . . ." We do not agree, however, that the section quoted vests the Highway Division with authority to decide the specific location of highways.

We hold that the General Assembly empowered the DOT Commission to make the decision regarding which of the alternatives proposed by the Highway Division should be adopted as part of the Department's overall plan. Plaintiffs' arguments to the contrary primarily focus on the absence in chapter 306 of an express provision granting the DOT Commission authority to decide the location of highways. Plaintiffs' arguments are not, in our view, determinative. The Commission's powers include not only those expressly created by statute, but also those which arise by necessary or fair implication from powers expressly granted. Among the powers expressly given the Commission is the duty annually to "develop a *comprehensive* transportation plan" including "improvements to be accomplished during the next calendar year." §§ 307.10, 307A.2(12), The Code (emphasis added). We may fairly imply from this power that the Commission has authority to make decisions regarding the location of primary highways in this state. Were the rule otherwise the Commission could not develop a truly comprehensive yearly plan. One important aspect of the plan for improvements—where to locate highways—would be left to the discretion of a separate division of the department.

We also note that section 307.10 requires the annual budget of DOT to be approved by the Commission. This provision also implies Commission power to determine the location of primary highways. Pursuant to such power, the Commission presumably could refuse to include funds in its budget for highway projects with which it disagreed. We hold that the DOT Commission possesses power to decide which of alternative routes prepared by the Highway Division it wishes to adopt.

This conclusion is consistent with the General Assembly's intent in chapter 306. The preamble to the Act makes clear that the duties and responsibilities of the various independent transportation-related agencies were transferred to DOT to assure coordination of their efforts. Coordination of effort presupposes some coordinating authority. Power to decide which among various alternative highway routes best effectuate DOT's overall policy enables the Commission to fulfill its coordinating role. Contrary to plaintiffs' contention, we believe the General Assembly contemplated that the DOT Commission would participate in the planning of this state's transportation facilities in fulfilling its policy-making powers. A different conclusion would result in a fractionated agency.

The other issues raised in the appeal need not be considered.

REVERSED AND REMANDED.