**AEROJET–GENERAL CORPORATION,**
an Ohio corporation, Plaintiff-
Appellee,

v.

The **AMERICAN ARBITRATION ASSO-
CIATION**, a New York corporation,
Defendant-Appellee,

Non-Ferrous Metal Refining, Ltd., an Is-
raeli corporation, Defendant-
Appellant.

No. 71–2565.

United States Court of Appeals,
Ninth Circuit.

April 30, 1973.

Melvyn B. Fliegel (argued), Irving L. Halpern, Schwartz & Alschuler, Los Angeles, Cal., for defendant-appellant.

Orville O. Orr, Jr. (argued), John G. Wigmore, Lawler, Feliz & Hall, Bruce A. Bevan, Jr., Musick, Peeler & Garrett, Los Angeles, Cal., for appellees.

Before DUNIWAY and WRIGHT, Circuit Judges, and LINDBERG,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

The plaintiff-appellee Aerojet contracted with defendant-appellant Non-Ferrous in 1969 and 1970 to engage in a commercial venture in Israel. Aerojet, an Ohio corporation, has its principal place of business in the Central District of California. Non-Ferrous, an Israeli corporation, has its principal place of business there. Each contract provided that any dispute arising thereunder was subject to arbitration in accordance with the rules of the American Arbitration Association (AAA).

A dispute involving a $30,000,000 contract arose in November 1970. Non-Ferrous requested arbitration in New York. Aerojet responded with a lawsuit in the state court of New York seeking to enjoin the proposed arbitration on the ground that it had been fraudulently induced to enter into the contract calling for arbitration. An ex parte stay of arbitration was vacated in March 1971 when the New York court ordered the

---

\* Of the Western District of Washington.

parties to proceed with arbitration. This order was affirmed on appeal on June 10, 1971.

After the final decision in the New York action was rendered, Aerojet, by letter to the AAA, objected· to New York as the locale and gave reasons for holding the arbitration in Los Angeles. Non-Ferrous responded with a statement on behalf of its own choice of New York.

On July 12, 1971, the AAA concluded that the arbitration should be held in New York.[1] Aerojet objected and requested review of the decision by the Association's Executive Vice President. When the latter reaffirmed the designation Aerojet immediately sued in the district court in California. On July 21, 1971 Aerojet obtained an ex parte order temporarily restraining the AAA from conducting the arbitration in New York.

Aerojet's amended complaint in the district court based jurisdiction on diversity of citizenship [28 U.S.C. § 1332]. It set forth the facts substantially as we have outlined them, but charged the AAA with arbitrary and unreasonable conduct in its selection of New York as the locale for arbitration.

"in that New York City bears no relationship to either the dispute between plaintiff and Non-Ferrous nor the parties and witnesses nor the making and performance of the aforesaid contracts; and, that the proper locale in which to proceed with the arbitration is an agreeable location within this District. . . ." [p. 4, Amended Complaint]

There followed a statement that Aerojet and its witnesses would find it more convenient to arbitrate in Los Angeles than in New York. The AAA replied to the motion for preliminary injunction with affidavits of its officers, giving reasons for fixing New York as the locale for arbitration.[2]

---

1. Section 10, Commercial Arbitration Rules provides:

"§ 10. Fixing of Locale—The parties may mutually agree on the locale where the arbitration is to be held. If the locale is not designated within seven days from the date of filing the Demand or Submission the AAA shall have power to determine the locale. Its decision shall be final and binding. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within seven days after notice of request, the locale shall be the one requested."

2. The affidavit of Donald T. Cahill, Assistant to the Executive Vice President of the AAA, stated:

"(a) Claimant's [Aerojet's] initial demand for arbitration . . . was filed in the New York Regional Office of the Association and the respondent [Non-Ferrous], seeking an order staying the arbitration proceedings, filed motion papers in the New York courts, at first instance in the Supreme Court of New York County, Special Term Part 1, and later on appeal to the Supreme Court, Appellate Division, First Department . . . Thus, the New York jurisdiction was the location to which the parties addressed themselves from the very beginning of the case.

"(b) The fact that the parties agreed in their contract that the law of California would apply and govern their case, is not conclusive on the locale of the hearing. If the arbitration is held in New York, the arbitrators can still apply California law.

"(c) While it is true respondent, its Divisions, Officers and employees are located in California, consideration was given to the fact that the claimant is based in Isreal, thereby making it necessary for it to transport all its witnesses and evidence from one country to another. If the hearings were to be held in California, an extra and unequal burden and expense would be placed on the claimant with respect to transporting these witnesses and evidence to that location. I determined New York to be a fair central point, equally accessible and convenient to both parties.

"(d) Regarding the fact that the contracts involved in this case were negotiated, drawn and executed in California, the performance of the agreements, involves activities taking place in Israel. Further, because such performance does take place in Israel, there is a closer connection between the subject matter of contracts and Israel than between the subject matter and California. Thus, the claimant could have, if so desired, requested Israel as the location for the arbitration hearings."

After the hearing in the district court the AAA and Non-Ferrous were enjoined from proceeding to arbitrate in New York "pending the trial of the cause on its merits." This was on August 12, 1971. Non-Ferrous appealed this order [28 U.S.C. § 1292(a)(1).] [3]

### I.

Our first question is whether judicial scrutiny of arbitration proceedings is *ever* appropriate prior to the rendition of a final arbitration award.[4] If not, then the order of the district court must be reversed irrespective of the merits of the AAA's decision.

The use of arbitration as a means of settling disputes has been accorded specific Congressional endorsement in the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and should be encouraged by the federal courts. Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir. 1942). It is apparent, therefore, that judicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases. The basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings. Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577 (2d Cir. 1967). To permit what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate this purpose.

For this reason it has been held that court review of evidentiary rulings should not be had before a final award has been rendered. *See* Compania Panemena Maritima v. J. E. Hurley Lumber Co., 244 F.2d 286 (2d Cir. 1957). *Cf.* Application of Katz, 3 A.D.2d 238, 160 N.Y.S.2d 159 (1957).

On the other hand a ruling fixing the place for hearing may cause irreparable harm to one or more of the parties. As this court noted in Pacific Car & Foundry v. Pence, 403 F.2d 949 (9th Cir. 1968), error in denying a change of venue cannot effectively be remedied on appeal from the final judgment. Extreme cases can be imagined in which the choice of locale for arbitration is not made in good faith and severe irreparable injury is inflicted on one or more of the parties. In such case the courts should be free to prevent a manifest injustice. For this reason we decline to hold that immediate judicial review of a ruling setting the place for arbitration is never justified. *Cf.* Pacific Car & Foundry, Inc. v. Pence, *supra.* Only an extreme case could warrant such judicial review, and this is emphatically not such a case.

### II.

Nor do we feel that the language in the AAA's Commercial Arbitration Rules that its determination as to locale is "final and binding" precludes a limited inquiry into whether that determination was made in accordance with a minimum standard of fair dealing. While it has been held that parties to an arbitration can agree to eliminate all court review of the proceedings, Gramling v. Food Machinery & Chemical Corp., 151 F.Supp. 853 (D.S.C.1957), the intention to do so must clearly appear. Payne v. SS Tropic Breeze, 423 F.2d 236 (1st Cir. 1970).

---

3. We heard oral argument on March 7, 1973, and entered an order on March 8, 1973 reversing the district court and dissolving a preliminary injunction. We indicated that a formal opinion would follow. For reasons that we shall hereafter explain, we contemplated that the parties would proceed at once with arbitration proceedings. Appellee moved on March 22, 1973 to stay the order of March 8 until 10 days after the filing of this opinion. That motion was denied.

4. Emphasis should be placed on the word "proceedings." There can always be prior judicial inquiry into the validity of an agreement to arbitrate. In the present case it is conceded that there was a valid agreement to arbitrate at a locale selected by the AAA. *See* In re Royal Globe Ins. Co. v. Spain, 36 A.D.2d 632, 319 N.Y.S.2d 115 (1971).

Ordinary language to the effect that the decisions of the arbitrator shall be "final and binding" has been held not to preclude some judicial review. Good-all-Sanford, Inc. v. United Textile Workers, 233 F.2d 104 (1st Cir. 1956). As the Fifth Circuit has stated, " 'Finality' is a mirage if relied upon to preclude *any* judicial review of an arbitration award. . . ." Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., 415 F.2d 403, 412–413 (1969).

### III.

Having concluded that some judicial scrutiny of the arbitrator's choice of locale was appropriate we must consider whether the court was justified in granting an injunction against the arbitration proceedings prior to a trial of the facts. Aerojet argues that the preliminary injunction was proper because it was likely that the determination of the arbitrator would be set aside as "arbitrary and capricious." We disagree.

■ In the first place we doubt that that the standard Aerojet would have us apply is the proper standard of review. Aerojet's contentions amount to no more than a lengthy statement that the AAA acted erroneously in choosing New York over Los Angeles as the situs for the arbitration. The "correctness" of the abitrator's rulings is not a proper concern of the reviewing court. Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 184 F. Supp. 116 (S.D.N.Y.1959), aff'd 274 F.2d 805 (2d Cir. 1960). *See also* Lundgren v. Freeman, 307 F.2d 104 (9th Cir. 1962).

■ An arbitration award must be upheld unless it be shown that there was partiality on the part of an arbitrator, Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), or that the arbitrator exceeded his authority, Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A., 312 F.2d 299 (2d Cir. 1963), or that the award was rendered in "manifest disregard of the law." Trafalgar Shipping Co. v. International Milling Co., 401 F.2d 568, 572 (2d Cir. 1968).[5]

■ There is no allegation that any such state of facts existed; nor is it at all likely that Aerojet could have proved such facts even if they had been properly alleged. Indeed, even if we applied something akin to the "clearly erroneous" test that Aerojet requests, we would still uphold the AAA's decision. In view of the factors recited by representatives of the association in support of its choice of New York the selection was entirely reasonable. *Cf.* Reed & Martin, Inc. v. Westinghouse Electric Corp., 439 F.2d 1268 (2d Cir. 1971).

### IV.

■ This is an equity case, and it is well established that in such a case, although a reviewing court will usually decide only those issues which are necessary to dispose of an appeal, an interlocutory appeal brings the entire case before the court. Thus, in equity cases "[i]f insuperable objection to maintaining the bill clearly appears, it may be dismissed and the litigation terminated." Deckert v. Independence Shares Corp., 1940, 311 U.S. 282, 287, 61 S.Ct. 229, 232, 85 L.Ed. 189. *Accord*, Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 52–53, 58 S.Ct. 459, 82 L.Ed.

5. Even if we assume there is some distinction between the ruling of the AAA here and a final arbitration award covered by 9 U.S.C. § 10 the test would be the same. It was part of the arbitration agreement that the AAA could select a locale for the arbitration if the parties failed to agree on one. In re Royal Globe Ins. Co. v. Spain, *supra* note 3. When the parties to a contract agree that a factual determination is to be made by a neutral third party that determination is upheld in the absence of fraud or gross mistake as would necessarily imply bad faith. Baez v. Disabled American Veterans Service Foundation, 119 F.Supp. 490 (S.D.N.Y. 1954) ; Davidson v. Times Printing Co., 63 Wash. 577, 116 P. 18 (1911).

638; Denver v. New York Trust Co., 1913, 229 U.S. 123, 136, 33 S.Ct. 657, 57 L.Ed. 1101; Mast, Foos & Co. v. Stover Mfg. Co., 1900, 177 U.S. 485, 494–495, 20 S.Ct. 708, 44 L.Ed. 856; Johnson v. England, 356 F.2d 44, 46 n. 1 (9 Cir., 1966). At least one Court of Appeals has exercised this power to enter judgment for an appealing plaintiff. Hurwitz v. Directors Guild of America, Inc., 364 F.2d 67, (2 Cir., 1966). Moore believes that this is entirely proper in certain cases. 9 J. Moore, Federal Practice ¶ 110.25[1] at 273 (2d ed. 1972). Normally this power is used to review other, nonappealable orders of the district court, such as the denial of a motion to dismiss.

 Both the AAA and Non-Ferrous asked the district court to dismiss the complaint at the hearing on the motion for a preliminary injunction but neither of them made a motion to dismiss and the district court did not discuss the matter. However, the power to dispose of the whole case is not restricted to such situations.

In Mast, Foos, & Co. v. Stover Mfg. Co., *supra*, a patent case, the Supreme Court held:

"Does this doctrine apply to a case where a temporary injunction is granted *pendente lite* upon affidavits and immediately upon the filing of a bill? We are of opinion that this must be determined upon the circumstances of the particular case. . . . [I]f there be nothing in the affidavits tending to throw a doubt upon the existence or date of the anticipating devices, and giving them their proper effect, they establish the invalidity of the patent; or if no question be made regarding the identity of the alleged infringing device, and it appear clear that such device is not an infringement, and no suggestion be made of further proofs upon the subject, we think the court should not only overrule the order for the injunc-

tion, but dismiss the bill." 177 U.S. at 495, 20 S.Ct. at 712.

*See also* Denver v. New York Trust Co.; *supra.*

 This reasoning supports an order dismissing Aerojet's complaint. The affidavits filed in connection with the motion for a preliminary injunction do not conflict in any material respect. Rather, they establish that both parties will be inconvenienced in terms of transporting records and witnesses if the arbitration is held in New York, that Aerojet would not incur such expenses if the arbitration were held in Los Angeles while Non-Ferrous' burden would be increased, and that the AAA took these and other factors into account in making its decision.

The only factual showing that could conceivably strengthen Aerojet's case would be that its two non-employee witnesses definitely would not go to New York. However, "no suggestion [has been] made of further proofs upon the subject." Moreover, Aerojet concedes that Israel would be a rational location, and if the witnesses would not go to New York, presumably they would not go to Israel either.

In sum, there is no material factual dispute in the case, and under the standard of review that we have set out in Part I of this opinion, Non-Ferrous and the AAA would clearly be entitled to judgment as a matter of law should they so move. Under *Mast, Foos & Co.*, it is appropriate for us to terminate the litigation now.

### V.

Our mandate issued on April 2, 1973 following our order which read:

"The order of the district court is reversed and the preliminary injunction is dissolved. An opinion will follow."

 Upon issuance of the mandate, the Court of Appeals loses control of the

**254**

judgment except for its power to recall the mandate. Meredith v. Fair, 5 Cir., 1962, 306 F.2d 374, 376. However, we can and do exercise that power here.

The authority of a Court of Appeals to recall its mandate is not conferred by statute, but its existence cannot be questioned. Greater Boston Television Corp. v. F. C. C., 149 U.S.App.D.C. 322, 463 F.2d 268, 277, 1971; Meredith v. Fair, *supra*, 306 F.2d at 378 [6] Broadly stated, this authority may be exercised for "good cause" and to "prevent injustice," and one of the classic examples of such circumstances is where the mandate does not fully express the intentions of the court. Greater Boston Television Corp. v. F. C. C., *supra*, 463 F.2d at 277–278. Thus, in Meredith v. Fair, *supra*, the Court of Appeals directed the district court to "issue [the injunction] as prayed for in the complaint." Subsequently, after dissolving an improperly granted stay, the court concluded that its instructions were too general, *sua sponte* recalled the mandate, and set out in detail the relief to be granted. 306 F.2d at 378–379.

Similarly, our March 8, 1973 order is incomplete, and does not fully express our intentions. We will therefore recall the mandate to make its disposition of the case complete.

CONCLUSION

It is ordered that:

1. The mandate is recalled.

2. This court's judgment is modified to read:

The order of the district court is reversed and the preliminary injunction is dissolved. The action shall be dismissed with prejudice and the mandate shall issue forthwith.

6. It was once the law that a Court of Appeals' power to recall its mandate expired at the end of the term at which it was issued. However, the better view is that this limitation was removed by the abolition of the "term" concept in 1948, the lapse of time being significant only with respect to the court's duty to "prevent injustice." Greater Boston Television

Corp. v. F.C.C., *supra*, 463 F.2d at 275–276. At any rate, the March 8 order and subsequent mandate were clearly issued within the present "term."

* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, 5 Cir. 1970, 431 F.2d 409, Part I.