SEGUROS de SERVICIOS de SALUD de PUERTO RICO, INC., Plaintiff,

v.

McAUTO SYSTEMS GROUP, INC., Defendant and Third–Party Plaintiff,

v.

ADVANCED SYSTEM APPLICATIONS, INC., Third–Party Defendant.

Civ. No. 87–1731 (JP).

United States District Court, D. Puerto Rico.

Aug. 8, 1988.

Ricardo Casellas, with Fiddler, González & Rodríguez, San Juan, P.R., for plaintiff.

Pedro Santa, with O'Neill & Borges, Hato Rey, P.R., for defendant and third-party plaintiff.

Héctor Reichard, with Lasa, Escalera & Reichard, San Juan, P.R., for third-party defendant.

## OPINION AND ORDER

· JUSTOS ARENAS, United States Magistrate.

Plaintiff, Seguros de Servicios de Salud de Puerto Rico, Inc. (hereinafter "SSS"), a corporation organized and with principal place of business in Puerto Rico, brings this action seeking a court order to compel defendant, McAuto Systems Group, Inc. (hereinafter "MSGI"), a Delaware corporation with principal place of business in New York, to arbitrate a dispute between them arising from an alleged breach of the agreement entered into by the parties on December 13, 1985. This court's jurisdiction is invoked pursuant to the diversity of citizenship among the parties, 28 U.S.C. § 1332, and pursuant to the Federal Arbitration Act, 9 U.S.C. § 4. The facts are as follows.

On December 13, 1985 SSS and MSGI entered into a contract whereby MSGI agreed to provide, install and operate an electronic data processing system for SSS in Puerto Rico. The agreement required defendant to notify SSS by October 1, 1986 if the system would not be operational by January 2, 1987, the agreed "Operational Start Date." (See SSS's Motion to Dismiss, Exhibit 1.) Prior to this agreement defendant had entered into a contract on January 1, 1985 with third-party defendant, Advanced System Applications, Inc. (hereinafter "ASA"), a Delaware corporation with principal place of business in Illinois. Under the MSGI/ASA agreement, ASA was to provide completed software in the form of MSGI/CAPS and MSGI/ADMIN [1] subject to an installation schedule included in the contract. The contract contained a clause by which "ASA recognize the importance

---

1. MSGI/CAPS and MSGI/ADMIN are manifestations of a computer software system, created by third-party defendant and used by MSGI under a license agreement, consisting of generalized system components for the purpose of on-line claims administration and payment known as "ASA claims Administration and Payment System" and "ASA/CAPS."

of SSS being able to be operational with MSGI/CAPS and MSGI/ADMIN ... on July 1, 1986." See ASA's Motion to Dismiss, Exhibit A.

Once the system became operational and complete MSGI would transfer the use license given by ASA for the MSGI/ADMIN and MSGI/CAPS programs to SSS.[2] To that effect, SSS agreed to be bound by certain provisions of the MSGI/ASA agreement as inducement for ASA's execution of the contract. See ASA's Motion to Dismiss, Exhibit A.

By October 1, ASA had not notified MSGI, although not required to, about the impossibility of its fully complying on the due date. Apparently relying on this lack of notice, MSGI did not notify SSS about the system not being operational by January 2, 1987. When the due date arrived, the system was not in operation.

Both agreements, SSS/MSGI and MSGI/ASA provide for the arbitration of the disputes that arise during their term. The difference in the arbitration clauses of the contracts is that the MSGI/ASA agreement requires arbitration to be held in the city of New York while the SSS/MSGI does not provide the situs for the arbitration.

On November 20, 1987, MSGI presented a demand for arbitration against ASA and SSS in the American Arbitration Association's New York Regional Office. The complaint and petition for order compelling arbitration here in question was filed by SSS on December 8, 1987. Defendant counterclaimed and filed a third-party complaint in addition to a request to temporarily stay the arbitration proceeding. On March 4, 1988, the American Arbitration Association (hereinafter "AAA"), upon SSS's objections to the proceedings being held in New York, declared that Puerto Rico was the proper locale to hear the dispute over the SSS/MSGI contract.

MSGI requests the consolidation of the arbitration proceedings alleging that it is necessary for the best interest of justice and to avoid unnecessary costs or delay.

Plaintiff and third-party defendant oppose consolidation claiming that:

(a) consolidation is not provided for in neither of the agreements;

(b) the AAA ruling is binding, thus rendering all claims and counterclaims moot; and, if dismissal is proper, then the court would not have jurisdiction to entertain the third party complaint; and,

(c) the SSS/MSGI agreement is subject to the interpretation permitted under the laws of Puerto Rico. As such, arbitration in New York is not feasible due to the conflict of laws.

The issues before us are:

(1) whether the AAA's determination may be reviewable by this court. If it may not, then we shall determine whether the decision renders all claims and counterclaims as moot precluding this court's jurisdiction;

(2) whether consolidation of the arbitrable disputes is proper and feasible. If not, we must then determine, subject to our holdings above, whether the third party complaint may continue.

■ In enforcing the arbitration of disputes arising from transactions involving interstate commerce, federal law applies, *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270 (1967), *Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984); *Protane Gas Co. of P.R. v. Sony Consumer Products Co.*, 613 F.Supp. 215, 217 (D.P.R.1985); and, when citizens of different states, as here, engage in the performance of a contractual operation in one of those states, they are engaged in a contract involving commerce under the Federal Arbitration Act. *Del E. Webb Const. Co. v. Richardson Hospital Authority*, 823 F.2d 145, 147 (5th Cir.1987); *Mesa Operating Ltd. Part-*

---

**2.** A use license assignment agreement was apparently ready to be signed once the system became operational. See SSS's Motion to Dismiss, Exhibit 9 and ASA's Motion to Dismiss, Exhibit A.

*nership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 243 (5th Cir.1986).

Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2, states that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 4 of the Act provides for the hearings and proceedings to be held "within the district in which the petition for an order directing such arbitration is filed," if, however, the court orders arbitration to proceed "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Before a § 3 application for a stay while the parties arbitrate, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp.,* 388 U.S. at 404, 87 S.Ct. at 1806; *Hilti, Inc. v. Oldach,* 392 F.2d 368, 371 (1st Cir.1968). The court must first determine whether the parties agreed to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). Any doubts as to the scope of arbitrable issues must be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

However, the main issue here at stake is not the enforcement of an arbitration agreement, but instead the how and where

should arbitration take place. As to this Professor Corbin has stated that:

> It is appropriate for courts whose public policy now favors arbitration to use their inherent equitable jurisdiction to supervise the arbitration process to make it workable and . effective. This includes taking steps to make the process fair, to make it adequate, to protect the interests and reasonable expectations of those who are sought to be bound by the process.

Corbin on Contracts, § 1433 at 598 (Kaufman, *supra,* 1984). This is what we intend to do.

In the instant case we are asked to review the choice of locale for arbitration determined by the AAA, the agency whose rules the parties agreed to be subject to. Review is appropriate but the circumstances for which it may be overturned must be limited. M. Domke, *Domke on Commercial Arbitration,* § 16:03, at 240 (Revised ed. 1984); *Aerojet–General Corp. v. American Arbitration Association,* 478 F.2d 248, 251 (9th Cir.1973). In *Aerojet* the court held:

> Extreme cases can be imagined in which the choice of locale for arbitration is not made in good faith and severe irreparable injury is inflicted on one or more of the parties. In such case the courts should be free to prevent a manifest injustice.

478 F.2d at 251. The court further considered that the AAA's Commercial Arbitration Rules, concerning the finality of its decisions, do not preclude "a limited, inquiry into whether /the choice of locale/ determination was made in accordance with a minimum standard of fair dealing." *Id.* The test is whether the choice of locale may cause irreparable harm to one or more of the parties.[3]

Similarly, the courts' duty under the Act to enforce agreements to arbitrate does not preclude inquiry as to the possibility of

---

**3.** This result somewhat differs from the holding reached in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985). In *Dean Witter* the Court held that the Act mandates the district courts to compel arbitration of pendent arbitrable claims

"even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* The *ratio decidendi* of the decision emanates from the lower court's refusal to enforce the arbitration agreement. This is not the case at hand.

ordering the celebration of consolidated or joint proceedings. Professor Williston states that "/a/rbitration proceedings may be consolidated, even where all the parties are not identical, if there are common issues involved and if it can be established that there is no prejudice to a substantial right." 16 *Williston on Contracts* § 1920A at 231. Professor Domke follows the same rationale when it declares that:

Two or more separate arbitration proceedings may be ordered to be consolidated by the courts when at least one party is common to the arbitrations to be held and the issues are substantially the same, as long as no substantial right of a party is prejudiced by the consolidation. Thus, for example, where two contracts containing broad arbitration clauses have different provisions as to the amount of goods and the price, but where the same witnesses would be called and the same testimony heard by the same persons in each proceeding, the Arbitrations may be consolidated. Parties may seek consolidation of arbitrations for a number of reasons: the consolidated arbitration reduces instances of conflicting awards; such arbitration is likely to be less expensive for the parties; time will be saved for both the parties and witnesses. Nevertheless, in some instances, a party may be compelled by such consolidation to assume additional burdens when issues are involved with a third party with whom he has no dispute.

Consolidation or joint proceedings before the same arbitrators, if not expressly provided in rules of agencies administering commercial arbitration nor forbidden in such rules, will not be determined by such agencies or by the arbitrator, if one party does not agree, but rather will be left to the courts. In fact, the AAA Commercial Arbitration Rules, do not include a clause on consolidation and parties generally do not provide for it in the agreement.

Courts have generally taken a favorable view of consolidation of arbitrations, even when there is no specific statutory support for it.... Federal courts too have been favorable to consolidation of arbitration and have held that Rules 42(a) and 81(a) of the Federal Rules of Civil Procedure, also applies to arbitration. Power to order consolidation has also been attributed to federal courts under Sections 4 and 5 of the United States Arbitration Act, even over the objections of one of the parties.

*Domke on Commercial Arbitration, supra,* § 27:2 at 413–415.

However, the matter is not as clear as it seems. Opinions against consolidation also abound. *See Domke on Commercial Arbitration, id.* at 415–416.

■ In interpreting the Federal Arbitration Act, courts do not seem to agree on whether it allows for the consolidation of arbitration proceedings.

Plaintiff cites *Del E. Webb Const. Co. v. Richardson Hospital Authority, ante; Weyerhaeuser v. Western Seas Shipping Co.,* 743 F.2d 635 (9th Cir.), *cert. denied,* 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984); and, *Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 606 F.Supp. 1510 (S.D.N.Y.1985) to support its allegations against consolidation. These cases have ruled against consolidation because the terms of the agreements involved did not provide for joint arbitration. In *Weyerhaeuser* the court refused to order consolidation in the absence of consent, 743 F.2d at 637; and, the Fifth Circuit Court of Appeals, relying in *John Wiley & Sons v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1967), has held that the question of consolidation must be decided by the district court subject to whether the contracts permit consolidated arbitration. *Del E. Webb,* 823 F.2d at 149–150.

To the contrary, the Second Circuit Court of Appeals, in *Compañia Española de Petróleos, S.A. v. Nereus Shipping, S.A.,* 527 F.2d 966 (2d Cir.1975), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976), held that "there is more than ample support in the case law for the propriety of a court's consolidation of arbitrations under the federal statute," *id.* at 975; and that the liberal purposes of the Act "clearly require that /it/ be interpreted so as to

permit and even encourage consolidation of arbitration proceedings in proper cases, ..." *id. See also Gavlik Const. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 787–789 (3d Cir.1975); *Elmarina, Inc. v. Comexas, N.V.*, 679 F.Supp. 388, 391 (S.D.N.Y.1988); *Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 669 F.Supp. 577, 580 (S.D.N.Y.1987); *Sociedad Anónima de Navegación Petrolera v. Compañia de Petróleos de Chile, S.A.*, 634 F.Supp. 805, 809 (S.D.N.Y.1986); *Matter of Czarnikow–Rionda Co., Inc.*, 512 F.Supp. 1308, 1309 (S.D.N.Y.1981); *Marine Trading Ltd. v. Ore International Corp.*, 432 F.Supp. 683, 684–685 (S.D.N.Y.1977).

The only opinion from this circuit that discusses this issue is *Robinson v. Warner*, 370 F.Supp. 828 (D.R.I.1974). The case involved two separate contracts both having in common only one of the parties. Mendell Robinson contracted with architect Warner and contractor Benson to design and build plaintiff's home. Both agreements had arbitration clauses subjecting their disputes to the rules of AAA. The District Court of Rhode Island, Chief Judge Pettine, determined that "a consolidated proceeding in a tri-partite dispute ... is clearly the preferred procedure." *Id.* at 829. "/T/he prejudice attaching to the plaintiff of shouldering the costs of two arbitrations and facing the possibility of conflicting awards is equally, if not more, compelling than the alleged prejudice to defendant ... in joining a joint proceeding.... The mere desire to have one's dispute heard separately is not a sufficient showing of hardship that would counterbalance the considerable benefits served by a consolidated arbitration." *Id.* at 831. The court held that there is "ample legal basis under 9 U.S.C. § 4 to compel a joint arbitration ..." ordering consolidation pursuant to Rules 81(a)(3) and 42(a), Fed.R.Civ. P.[4] *Id.*

In the instant case we find a common party and interrelated issues. The agreement entered into by the parties to serve as an inducement for ASA's execution of the MSGI/ASA contract also intertwines the two agreements here at issue as well as the parties here involved. Furthermore, the possibility of conflicting awards if separate arbitrations are had may cause irreparable harm to defendant, MSGI, specially if the alleged breach may have been caused by ASA's negligence.

In any event we apply Rules 42(a) and 81(a)(3), Fed.R.Civ.P., to order consolidation in order to achieve the most expeditious and fair resolution of this case.

Therefore, we order that joint arbitration between the parties herein involved be held subject to the rules of the American Arbitration Association as provided in the two agreements here at issue.

The August 10 trial setting is vacated.

SO ORDERED.

---

**4.** Rules 81(a)(3) and 42(a), Fed.R.Civ.P., state in pertinent part that:

R. 81(a)(3)—In proceedings under Title 9, U.S.C., relating to arbitration, or under the Act of May 20, 1926, ch. 347, § 9 (44 Stat. 585), U.S.C., Title 45, § 159, relating to boards of arbitration of railway labor disputes, these rules apply only to the extent that matters of procedure are not provided for in those statutes.

R. 42(a)—**Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.