In the Matter of the Arbitration between
AMICIZIA SOCIETA NAVEGA-
ZIONE, Petitioner,

v.

CHILEAN NITRATE AND IODINE
SALES CORPORATION,
Respondent.

United States District Court
S. D. New York.
June 22, 1959.

Zock, Petrie, Sheneman & Reid, New York City, for petitioner.

Maclay, Morgan & Williams, New York City, for respondent.

CASHIN, District Judge.

Petitioner is here moving for an order to confirm the award of the arbitrators and for entry of judgment thereon pursuant to Title 9 U.S.C. § 9, and respondent moves to vacate, modify and correct the award under Sections 10 and 11. Respondent also moves that in the event the court does not modify the award, the court should then declare the contract in which the arbitration clause appears void for want of a meeting of the minds.

On April 3, 1959 respondent moved in the Supreme Court of New York for an order vacating or modifying the arbitrators' award under Sections 1462 and 1462-a of the Civil Practice Act. On April 6, 1959 the petitioner started this present action to confirm the award and the respondent acquiesced in the jurisdiction and filed its motion to vacate, modify or correct.*

Petitioner, an Italian corporation, is the owner of two ships which, while still under construction, it chartered to respondent, a corporation of Chile. The two charter parties were negotiated in New York City and dated September 6, 1955. Clause 29 of the charter party provided that hatches 2, 3 and 5 should be "double-rigged". It was later provided by Addendum No. 1 that all six hatches should be "double-rigged". The controversy arises over the meaning of "double-rigged". Petitioner-owner claims that "double-rigged" means two winches and two booms at each hatch and this is how the ship was outfitted. Respondent-charterer claims that "double-rigged" means four winches and four booms at each hatch. Pursuant to the arbitration clause of the charter parties the controversy went before three arbitrators—one selected by each side, and the third selected by the two first chosen. The arbitrators, one dissenting, found that the express "double-rigged" has two meanings in New York City and found in favor of the petitioner-owner.

It should be noted that New York law is cited because of the scarcity of federal cases directly in point, and because 9 U.S.C. §§ 9, 10 and 11 were taken from Sections 1461, 1462 and 1462-a of the New York Civil Practice Act.

"The federal act in respect to the sections now under consideration is almost verbatim like the corresponding provisions of the New York statute, so that the state practice may be regarded as highly persuasive, if not controlling." The Hartbridge, 2 Cir., 1932, 57 F.2d 672, 673.

Courts cannot rejudge the decision of arbitrators on the merits. If the courts could rejudge the decision then the value of arbitration would be lost. However, the decision of arbitrators can be upset if it was procured by fraud or corruption, if there was evident partiality, if the arbitrators exceeded their powers, or if their decision is a perverse misconstruction of the law. As was stated in Matter of Wilkins, 169 N.Y. 494, 62 N.E. 575,

"Where the merits of a controversy are referred to an arbitrator selected by the parties, his determination, either as to the law or the facts is final and conclusive, and a court will not open an award unless perverse misconstruction or positive misconduct upon the part of the arbitrator is plainly established, or there is some provision authorizing it. The award of an arbitrator cannot be set aside for mere errors of judgment, either as to the law or as to the facts."

It should be pointed out that courts are extremely hesitant about vacating or modifying arbitrators' decisions. All the cases stated that it can be done if the error is a manifest disregard of the law or a perverse misconstruction, but they hesitate to set aside the arbitrators' decision. In Fudickar v. Guardian Mutual Life Insurance Co., 62 N.Y. 392 the court found that the arbitrator had a misconception about the law but upheld the arbitrator's decision because it was not apparent that the decision was based solely on the misconception. The court said that—

"The party alleging error of law must be able to point to the award

* Jurisdiction is present in the district court to entertain these motions. However, the entertainment of the motions is not to be construed as a holding that the Supreme Court of the State of New York does not have concurrent jurisdiction of the proceedings. See my opinion in In Matter of the Arbitration of a dispute between Cocotos Steamship of Panama, S.A. v. Hugo Neu Corporation, D.C., 178 F.Supp. 491.

**118**

and say that the arbitrator, as appears from the award itself, intended to decide the case according to law, and has mistaken it, and that except for this mistake his award would have been different."

■ Respondent-charterer's claim that the arbitrators believed that they had to rule in favor of the petitioner-owner because it was the respondent who inserted the term "double-rigged" into the contract. They base this claim on the language of the arbitration award, which is:

"It is the opinion of Messrs. Simmonds and Schilling the expression 'double-rigged' has two meanings in New York, which is obvious from the evidence presented.

"The facts indicate this expression was proposed and inserted in the charter party at the request of the charterer.

"Therefore, under the circumstances, we find in favor of the owner in Item #1 of the agreement covering the submission to arbitration and no damages are awarded to the charterer."

I do not believe that the arbitrators felt compelled under the law to rule in favor of the petitioner. If they did this it is not apparent from the award itself, nor is it apparent that the arbitrators' decision is based solely on this misconception if they held it. The decision cites other evidence upon which the arbitrators could have based their decision. Whether or not we agree with their conclusion is immaterial. It is also significant to note that in the opinion of the dissenting arbitrator he criticizes the majority opinion in several respects but he does not state that they have misconstrued the law. I feel that the decision of the arbitrators should be affirmed.

Respondent also claims that, in the event that the arbitrators' award should be upheld, then the entire contract should be held void for want of a meeting of the minds. Respondent claims that, since both parties had a different meaning in mind for the term "double-rigged", there was no contract. Professors Corbin and Williston are both cited in support of this contention. However, we do not have to decide the question of whether or not there was a meeting of the minds.

■ "Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred." Grymes v. Sanders et al., 1876, 93 U.S. 55, 23 L.Ed. 798.

The Grymes case involved the sale of land which was represented to have on it the opening of a shaft of a gold mine. After the purchase it was discovered that the shaft opening was not on the land in question. Several months after the mistake or fraud was discovered they sued for rescission. The Supreme Court refused to rescind, stating:

"The subsequent conduct of the appellees shows that the mistake had no effect upon their minds for a considerable period after its discovery, and then it seems to have been rather a pretext than a cause."

■ In this case the first vessel was delivered to respondent on December 27, 1956 and a survey taken at that time and no exceptions taken. It was not until May 10, 1957 that the "mistake" was called to the attention of the petitioner by the respondent. After five months the respondent cannot claim that there is no contract because of no meeting of the minds.

The motion to confirm is granted, and the motion to vacate or modify is denied. Judgment will be entered upon compliance with the provisions of Title 9 U.S.C. § 13.

It is so ordered.