In the Matter of the Arbitration Award—
TOWN OF GREYBULL and Northern
Supply Company.

NORTHERN SUPPLY COMPANY,
Appellant (Petitioner below),

v.

TOWN OF GREYBULL, Appellee
(Respondent below).

No. 4650.

Supreme Court of Wyoming.

Feb. 24, 1977.

Graves & Hacker, Cheyenne, for appellant.

Gary P. Hartman, Basin, for appellee.

Before McCLINTOCK, RAPER, THOMAS and ROSE, JJ., and ARMSTRONG, District Judge, Retired.

ROSE, Justice.

This matter is here upon appeal from an order of the district court confirming an arbitration award.

On May 16, 1973, the Town of Greybull entered into contracts for the supply and installation of pipe for a water line project from Shell to Greybull, Wyoming. The town elected to divide the project into two separate contracts, one with Welch Construction Company, the installation contractor, and one with Northern Supply Company, the supply contractor. The contracts called for completion of the work within 125 days, but more than 200 days were required to finish the project.

Special condition 6 of the contract with Northern provided that if liquidated damages are assessed against the installing contractor—for late installation—the supply contractor will be assessed $200 per day for every day's delay which it caused.[1]

Since the contract was not completed within the designated time limitations, the town sought to impose a penalty against Northern and negotiations ensued. In the course of these negotiations Northern requested a clarification of the days for which the town sought to exact a penalty, in response to which request the mayor directed Mr. Livingston, the town's engineer, to prepare a summary and breakdown of the days for which the engineer believed Northern should be penalized. In a letter to the mayor, with copies to Northern and Welch, Livingston concluded that a maximum of 45 days' penalty were assignable to Northern[2] and he specified the days for which the penalty should be charged.

Northern disagreed and the question was submitted to arbitration under the appropriate provision of the contract.[3] The arbitrators, after hearing the evidence, decided Northern should be assessed a penalty for 31½ days, some of which were not the exact same days as those identified in the Livingston letter.

The district court upheld the arbitrators and we affirm the decision of the district court.

The appellant designates three contentions for error, which it describes as follows:

"I. The Arbitrators acted in excess of their authority by awarding damages beyond the scope of the parties' stipulated submission.

"II. The arbitrators acted in excess of their authority by deviating from the contractual documents in the determination of their award.

"III. If the arbitrators did intend to limit their award to the periods submitted and to comply with the requisites of the liquidated damages provisions, then the award contains an evident miscalculation and mistake."

In considering the issues raised by this appeal, we do so in an atmosphere created by the following statutes and rules applicable to arbitration litigation in Wyoming:

Section 1–1048.14, W.S.1957, 1975 Cum. Supp., provides in pertinent part:

---

1. The exact language is:
 ". . . Should any delay occur in pipe delivery after an order has been properly placed *which results in delay to the installation contractor* and subsequent assessment of liquidated damages against him, then the owner shall charge the supply contractor $200 per working day for each and every working day that work remains uncompleted after the time specified for completion, to the extent in working days, that the supply contractor was late in delivery of any or all pipe. . . ." [Emphasis supplied]

2. Mr. Wilmarth, attorney for Northern, described the 45-day penalty issue in this way in his opening statement to the arbitrators:
 "I think for the benefit of the Arbitrators—and Mr. Davis [Attorney for the town] has indicated that there are some areas at least that will not be in dispute in this particular area, and that is that the Town has made a determination through their [sic] engineer, Mr. Livingston, as to the maximum number of days that they believe Northern Supply is responsible for. And the Town's contention is not that Northern Supply is responsible for

seventy-nine days' delay which is the amount of money being withheld, but rather for just forty-five days of delay.
 "I think you all heard Mr. Davis say that the evidence presented by Mr. Livingston on behalf of the Town will be that the delay was forty-five days in duration. Therefore we believe, it is the contention of Northern Supply that the other—and I think Mr. Davis agrees that that frames the issues for this particular hearing—and the issue is between forty-five days and seventy-nine days will be in contention." [Bracketed matter supplied]

3. The contract provides:
 "All questions or controversies which may arise between the Contractor and the Owner, under or in reference to this contract, shall be subject to the decision of some competent person to be agreed upon by the Owner and the Contractor, . . . Should the Owner and the Contractor be unable to agree upon such person, a board of three arbitrators shall be chosen, . . . and the decision of any two of said arbitrators shall be final and binding upon the parties. . . ."

"When court to vacate award.—(a) Upon application of a party, the court shall vacate an award where:

"(1) The award was procured by corruption, fraud or other undue means;

"(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(3) The arbitrators exceeded their powers; . . ."

Section 1–1048.15, W.S.1957, 1975 Cum. Supp., provides:

"When court to modify or correct award.—(a) Upon application made within ninety days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

"(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award.

"(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

"(3) The award is imperfect in a matter of form, not affecting the merits of the controversy. . . ."

■ Arbitration is a method of voluntary settlement of disputes embedded in the public policy of Wyoming and is favored by this court. *Riverton Valley Electric Ass'n v. Pacific Power & Light Co.*, Wyo., 391 P.2d 489.

■ Courts which favor the arbitration process are reluctant to disturb arbitrators' just solutions to controversies: *Oil, Chemical and Atomic Workers Union v. Great Lakes Carbon Corporation*, Wyo., 376 P.2d 640; *William J. Burns International Detective Agency, Inc. v. New Jersey Guards Union, Inc.*, 64 N.J.Super. 301, 165 A.2d 844; *Lentine v. Fundaro*, 29 N.Y.2d 382, 328 N.Y. S.2d 418, 278 N.E.2d 633.

■ We have said that before we will upset a district court's decision upholding an arbitration award, appellant must have discharged its proof burden by showing with clear and convincing evidence that the award

". . . was obtained by fraud, corruption, behavior beyond the bounds of natural justice, excess of authority, or a manifest mistake of fact or law appearing upon the face of the award . . . ." *Riverton Valley v. Pacific Power,* supra, at 391 P.2d 500, citing *Waisner v. Waisner,* 15 Wyo. 420, 89 P. 580, and *Oil, Chemical & Atomic Workers Union, Local 2–230 v. Great Lakes Carbon Corporation,* Wyo., 376 P.2d 640.

### FIRST AND THIRD ASSIGNMENTS OF ERROR

Appellant's first and third issues are conditioned upon its assumption that the parties had "stipulated" that the town's claim would be restricted to the specific days assigned for penalty by the Livingston letter. Therefore, the question of whether there was in fact such a "stipulation" by which the arbitrators and the parties are bound receives our initial attention.

In framing and arguing the first and third issues, the appellant has "assumed a fact which is not in evidence." We do not find the exchanges concerning the Livingston letter to structure a "stipulation" of the parties which binds either of them in making and resisting their claims, the board in making its award, the trial court in upholding the decision of the arbitrators, or this court in affirming the trial court.

Black's Law Dictionary, Revised Fourth Edition, defines *stipulate* as: "Arrange or settle definitely, as an *agreement* or covenant. *Mennen Co. v. Krauss Co.*, D.C.La., 37 F.Supp. 161, 163." [Emphasis supplied]

In the same dictionary, supra, under the heading *"stipulation,"* we find the following:

"the name given to any *agreement* made by the attorneys engaged on opposite sides of a cause, (especially if in writing,) regulating any matter incidental to the proceedings or trial, which falls within their jurisdiction. Such, for in-

stance, are agreements to extend the time for pleading, to take depositions, to waive objections, to admit certain facts, to continue the cause. See *Lewis v. Orpheus,* 15 F.Cas. [No. 8,330] 492; *Southern Colonization Co. v. Howard Cole & Co.,* 185 Wis. 469, 201 N.W. 817, 819." [Emphasis supplied]

"An *agreement* between counsel respecting business before the court. It is not binding unless assented to by the parties or their representatives, and most stipulations are required to be in writing. *Holland Banking Co. v. Continental Nat. Bank of Jackson County, Kansas City, Mo.,* D.C.Mo., 9 F.Supp. 988, 989." [Emphasis supplied]

Mr. Livingston, the town's engineer, testified before the arbitrators that he had written the letter and then went on to respond to further interrogation:

"Q. (By Mr. Davis [Attorney for the Town of Greybull]) Who requested it?

"A. Well, my covering letter says it was made in accordance with a request made by the Town at a meeting with representatives of Northern Supply.

"Q. Did the Town request it, if you know, or did Northern Supply request it?

"A. Northern Supply I. believe wanted some sort of a determination as to what the Town felt their [sic] responsibilities were as far as the late delivery of pipe.

"Q. I see.

"A. So, the Town agreed that they [sic] would do that and asked me to make that determination.

"Q. Thank you.

"MR. DAVIS: That is all.

"MR. WILMARTH [Attorney for appellant]: I might state for the record—and I apologize, Mr. Livingston was there but Mr. Davis was not—that this was a meeting held January 10th, 1975, at the Town Hall and I asked at that time for them to tell us what period of that seventy-nine days, if any, they thought we were responsible for.

"I believe that then the Town through the Mayor—and I wish that he. was still here—but turned to Mr. Livingston and at some later time *asked you to do that as best you could, as I understand it, with the idea that then you would send us a copy of your determination at which time then we would respond point by point to see what could be worked out.*" [Emphasis supplied]

The Livingston communication related that his engineering firm had found Northern to have been late in delivery of materials on certain specified days and was, therefore, liable for 45 days of liquidated damages.[4]

 There was no subsequent agreement between the parties prior to the arbitration proceeding to the effect that the days specified by Livingston were the *only* days for which the town would claim damages. At no time before the hearing did the town agree to be bound in the arbitration process by the representation contained in this letter. Northern did not move the board for an order defining the issues upon which the town relied. We find no dialogue in the hearing itself which can be construed as an agreement that the contents of the Livingston letter would be binding upon the parties or the arbitrators.[5] In our view, there was no *contract, agreement, or stipulation*

---

**4.** The arbitrators, under Clause 6 of the contract, supra, rightly determined the test to be—not the number of days that Northern was late in delivering the material, but, rather—the number of days the installation contractor was delayed by reason of the late material-delivery. The relevant finding of the board is:

"Town Exhibit No. 7 [the Livingston letter] shows that the Town Engineer's determination of 45 days [sic] penalty assessed to the pipe supply contractor is based entirely upon the number of days elapsing from 10 days

following date of order to date of delivery. He made no effort to determine whether the late delivery of the pipe caused a delay in the progress of the installation. For that reason, Town Exhibit No. 7 has not been accorded any weight." [Bracketed matter supplied]

**5.** It is true that there is an exchange in the record whereby the attorney for Northern—at the hearing—sought to restrict the testimony to the times designated in the Livingston letter but the arbitrator ruled that it would not be so restricted. See Mr. Zaring's ruling, infra.

on this subject at all. Northern simply wanted to know the basis of the claim the town was making and it was given this information in the regular course of pre-arbitration negotiations so it could "*see what could be worked out.*"[6] This request and its response was by way of preliminary inquiry and accommodation only and the exchange was too vague and indefinite to constitute a "stipulation," i. e., a "contract" or "agreement" by which the parties could be bound in the arbitration proceedings.

When the time frames contemplated by the Livingston letter were before the board of arbitrators in the context of whether one of the witnesses' testimony would be restricted to just the dates recited in that communication, this exchange ensued:

"MR. DAVIS: Do I understand the Arbitrators then, that you would prefer to limit Jay's testimony here with respect to the periods—[prescribed by the Livingston communication]

"MR. ZARING [an arbitrator]: *Not necessarily.* I am doing it from a standpoint of time. I just fail to see how we can—we've got an hour and fifteen minutes.

"*He can testify to these other things and we can draw our own conclusions.* [Emphasis supplied]

"MR. DAVIS: Right."

The testimony which flowed from Mr. Zaring's ruling ranged across the entire spectrum of the contract without restriction as to the Livingston time designations. This says to us that the parties, the witness, and the arbitrators proceeded with the understanding that the entire period with which the contract was involved was in controversy.

■ Since there was no binding stipulation, it follows that the arbitrators did not act arbitrarily or beyond the scope of their authority in disregarding it. It furthermore follows, since there was no stipulation, the appellant's argument that the arbitrators

"committed an obvious error in including 18½ days of liquidated damages within the parties' stipulation . . .," as contended for in support of Point III, must fail.

■ Additionally, we are not at liberty to choose the arithmetic of the appellant over the computations of the arbitrators with reference to what days should be assigned to Northern for the assessment of liquidated damages as Northern would have us do. That is not within the appellate prerogative. The appropriate rule is expressed in Riverton Valley Electric, supra, at 391 P.2d 500, where we said:

"It may well be that had the Commission pursued some other course a result more palatable to appellant would have been achieved. However, the solution of the problem was the very matter which had been submitted to the Commission for arbitration, and so far as the record before us is concerned there is no showing that the Commissioners did not exercise their best judgment in working out an exchange of area, customers, and facilities. It is not for us to inquire into the merits. *Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corporation*, D.C.N.Y., 184 F.Supp. 116, 117, affirmed 2 Cir., 274 F.2d 805, certiorari denied 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727; *Pacific Vegetable Oil Corporation v. C. S. T., Limited*, 29 Cal.2d 228, 174 P.2d 441, 445; and *Edwards v. State*, 72 Fla. 264, 73 So. 188, 190. Justice Grier stated many years ago, in *Burchell v. Marsh*, 17 How. 344, 351, 58 U.S. 344, 351, 15 L.Ed. 96, that 'If they [arbitrators] have given their honest, incorrupt judgment on the subject-matters submitted to them, after a full and fair hearing of the parties, they are bound by it; and a court of chancery have [sic has] no right to annul their award, because it thinks it could have made a better.'"

■ The contract in question here provided for a broad submission of all "ques-

---

**6.** Supra: Mr. Wilmarth, attorney for Northern.

tions or controversies"[7] to arbitration. Even if there had been a stipulation such as is contended for by the appellant, the arbitrators were free to base their award on facts or methods of computation other than those which the parties stipulated without exceeding their powers. *Continental Materials Corp. v. Gaddis Mining Company,* 10 Cir., 306 F.2d 952.

■ Under our statutes, a written agreement to submit a controversy to arbitration is *"valid, enforceable and irrevocable,"* except upon grounds which exist for the revocation of any contract.[8] The appellant has not called our attention to any facts or authority which support a conclusion that the parties, by a purported "stipulation," either revoked or intended to revoke the arbitration contract—nor are we otherwise aware of any such facts or authority which would lead us to such a conclusion. In consequence, the statute must govern.

## SECOND ASSIGNMENT OF ERROR

The second issue raised by the appeal urges that we set aside the arbitrators' award for the reason that they acted in excess of their authority by going outside the contractual documents in reaching their decision as to which days Northern should respond with penalty. This contention calls for an answer to this question:

Did the arbitrators in fact go outside the contract documents in reaching the award?

It is argued that for the arbitrators to assign penalty days to Northern they must first know what days the orders for pipe were made before deciding whether the supplier was at fault with respect to late deliveries. It is further urged that the only evidence in the record relating to when pipe orders were placed is contained in the Liv-

ingston letter and, argues Northern, there are 18½ days of penalty assessed against appellant which are beyond the scope of the dates contemplated by Livingston.

The arbitrators' award included the following finding:

"4. Town's Exhibits numbered 10 and 11 set forth the days lost as a result of delayed delivery of pipe to be as follows:

"November, 1973 11 days
December, 1973 14 days
April, 1974 2½ days
May, 1974 4 days"[9]

Town's Exhibit 11, referred to in the finding of the arbitrators, is a calendar kept by an employee of the town showing a detailed day-by-day account of the "pipe ordered," "pipe received" and "out-of-pipe days." In the space assigned to each day on the calendar there appear comments which respond to the above quoted categories, together with other pertinent remarks concerning the job progress.

Town's Exhibit 10 is the "Engineer's & Inspector's Daily Report" which shows the date—the shift—when it starts—stops—number of men involved—location—weather—description of operation—the pipe and other material used and a category titled "Station & Progress of Work." In the area designated as "Station & Progress of Work," the engineer indicates the days when there was no pipe for the main line. Also, the engineer kept in this category a running summary of the number of days the job was held up because they were "out of pipe for the main line."

■ Taken together, Town Exhibits 10 and 11, along with the sworn testimony of the installation contractor, support a conclusion that orders for pipe were properly

---

**7.** Contract language, note 3, supra.

**8.** The applicable Wyoming statute, § 1–1048.3, W.S.1957, 1975 Cum.Supp., provides:
"Applicability of act; written agreement to submit controversy to arbitration valid.—A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any

controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . ."

**9.** Both exhibits 10 and 11 were admitted into evidence upon stipulation of the parties.

placed and there was a resulting 31½ days' delay to the installation contractor when there was no pipe for it to install. We find, therefore, after thorough examination of the record, that there is adequate evidence to support the findings of the arbitrators. The arbitrators did not go outside the contract in reaching their 31½ days penalty finding.

There remains one last consideration. The appellant, under its second contention, further charges that the arbitrators deviated from the contract provisions in such manner as to act in excess of their authority in this following respect:

Since there had been no prior day-by-day assessments of liquidated damages against the installer provided for by the contract, there could, therefore, be no assessment of liquidated damages against the appellant.[10]

In a recent opinion we spoke of the risky consequences which flow from the decision of an attorney to remain silent during the trial and thereafter raise his objection for the first time upon appeal, referring to this technique as preserving a "briefcase error." *Gallup v. State,* Wyo., 559 P.2d 1024. We said in *Gallup*:

". . . We have further repeatedly held it was necessary to raise such objections contemporaneously, *Wright* [*Wright v. State,* Wyo., 466 P.2d 1014], supra. When defendant's counsel did not ask for further admonition or a mistrial, we cannot notice the same because to allow an attorney to sit silent and preserve a briefcase error for presentation at the appellate level is improper, *Booth v. Hackney,* Wyo., 516 P.2d 180, 184. . . ."

The same concept applies to proceedings such as those with which we are here concerned, just as it did in *Wyoming Bancorporation v. Bonham,* Wyo., 527 P.2d 432, 439, where we said:

". . . For a reviewing court to reach an asserted proposition of an appellant the issue must have been raised for decision before the administrative body

or administrator responsible for the decision. This is admirably expressed by the United States Supreme Court in the case of *United States v. L. A. Tucker Truck Lines,* 344 U.S. 33, 73 S.Ct. 67, 68–69, 97 L.Ed. 54, where it is said:

" 'We have recognized in more than a few decisions, and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the court. * * *' "

See additionally, *Moog Industries v. Federal Trade Commission,* 355 U.S. 411, 78 S.Ct. 377, 380, 2 L.Ed.2d 370, rehearing denied 356 U.S. 905, 78 S.Ct. 559, 2 L.Ed.2d 583, and *United States v. Elof Hansson, Inc.,* 48 C.C.P.A. 91, 296 F.2d 779, 781, certiorari denied 368 U.S. 899, 82 S.Ct. 179, 7 L.Ed.2d 95, following *Tucker Truck Lines,* and with a further discussion. Further, objections must have had particularity as to properly identify the question and to give notice of the contention, *National Labor Relations Board v. Seven-Up Bottling Co.,* 344 U.S. 344, 73 S.Ct. 287, 290–291, 97 L.Ed.2d 377. . . ."

In its opening statement, Northern's counsel identified the town's burden of proof as follows:

"In other words, they have to show not only did we fail to get the pipe there within approximately ten days, but that that particular failure indeed caused the installation contractor delays in the progress of his particular work."

He did not even intimate that he considered the entire proceedings to be improper absent a prior determination of the penalty assessment against the installer. This was never mentioned or contended for until this appeal.

It is now too late. It is waived.

Affirmed.

---

10. See note 1, supra, for the exact language of the contract provision in question here.