**WILD WEST TRADING COMPANY, a Wyoming Corporation, Appellant (Defendant),**

v.

**gbs&h ARCHITECTS, LANDSCAPE ARCHITECTS, PLANNERS, INC., a Florida Corporation, Appellee (Plaintiff).**

No. 93–230.

Supreme Court of Wyoming.

Sept. 23, 1994.

Joseph F. Moore and Glenn W. Myers of Moore & Myers, Jackson, for appellant.

James K. Lubing, Jackson, for appellee.

Before GOLDEN, C.J., THOMAS, MACY and TAYLOR, JJ., and CARDINE, J. (Retired).

MACY, Justice.

Appellant Wild West Trading Company appeals from an order which denied its motion to vacate or modify an arbitration award and from an order which confirmed the arbitration award and entered a judgment against Wild West.

We affirm in part and reverse in part.

## ISSUES

Wild West presents five issues:

I. The Trial Court erred in holding that the Arbitration Award of all damages sought by gbs&h Architects in the civil suit was within the authority of the Arbitrators.

II. The Trial Court erred in holding that the unsigned Phase II Contract was properly submitted to Arbitration.

III. The Trial Court erred in holding that the award to gbs&h Architects on behalf of Jorgensen Engineering did not exceed the authority of the Arbitrators.

IV. The Trial Court erred in holding that the parties submitted all matters between them to arbitration.

V. The Trial Court erred in failing to recognize Respondent's Counterclaim.

## FACTS

On July 15, 1989, Wild West and Appellee gbs&h Architects, Landscape Architects, Planners, Inc. executed a "Standard Form of Agreement Between Owner and Architect" (the Phase I agreement) wherein gbs&h Architects agreed to perform architectural services for Wild West on the Trails End Ranch project, a dude ranch which Wild West was building in Teton County, Wyoming. Pursuant to the Phase I agreement, gbs&h Architects agreed to provide "[m]aster planning, design schematics, construction documents and construction contract administration for

Phase I [1] development of [the] Trails End Ranch." The Phase I agreement contained an arbitration provision which stated in pertinent part:

7.1 Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

. . . .

7.3 No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Architect, and any other person or entity sought to be joined.

gbs&h Architects recommended to Wild West that Jorgensen Engineering be the engineering firm for the Trails End Ranch project. In August 1989, gbs&h Architects sent a letter to Jorgensen Engineering which requested that Jorgensen Engineering perform a list of engineering tasks at the Trails End Ranch. Even though Jorgensen Engineering did not have a written agreement which had been signed by either Wild West or gbs&h Architects, it, nonetheless, performed engineering services for the Trails

End Ranch project between the summer of 1989 and the summer of 1990.

In October 1989, gbs&h Architects and Wild West signed a letter agreement (the 1989 letter agreement) in which gbs&h Architects agreed to provide additional services [2] at the Trails End Ranch. The 1989 letter agreement stated: "These services are in addition to the signed contract for basic services for Phase I. All terms and conditions of the existing contract shall apply to this agreement."

gbs&h Architects later prepared another "Standard Form of Agreement Between Owner and Architect" (the proposed Phase II agreement) dated May 17, 1990, under which gbs&h Architects proposed to provide "[c]onstruction documents for Phase II [3] at [the] Trails End Ranch." The proposed Phase II agreement contained arbitration provisions identical with those which were contained in the Phase I agreement. Wild West did not sign the proposed Phase II agreement. In June 1990, gbs&h Architects sent Wild West a letter (the revised first phase proposal) which contained a "proposal for a revised first phase [4] for [the] Trails End Ranch." The revised first phase proposal did not contain any reference to arbitration or to the Phase I agreement. Wild West did not sign this revised first phase proposal.

Although Wild West had not signed either the proposed Phase II agreement or the

1. The Phase I agreement described the Phase I project as consisting of the following:

overall master plan, 1360 s.f. Dining Room, (3) 1135 s.f. employee housing units, (1) 1495 housing unit, 8608 s.f. Bunkhouse/stables facility, 2217 s.f. Manager's residence, (2) 936 s.f. relocated, renovated guest cabins, (1) 650 s.f. relocated, re[n]ovated guest cabin and (3) 1450 s.f. new guest cabins.

2. The 1989 letter agreement described the additional services as follows:

In response to your request, gbs&h [A]rchitects, [L]andscape [A]rchitects, [P]lanners, [I]nc. will provide interior services outlined below for Phase One construction at Trails End Ranch. These services shall include but not be limited to design and/or selection, coordination and arrangement of furniture and furnishings, antiques, antique photographs, photographs, artwork, frames, linens, curtains,

rugs, artifacts, quilts, hardware, mirrors, appliances, lighting fixtures and wood stoves.

3. The proposed Phase II agreement described the Phase II project as consisting of the following buildings:

a two-story, 22,420 s.f. Inn/Lodge, a two-story, 7,245 s.f. Cookhouse/Dining/Ski and Fly–Guide Facility, 2 new single story cabins at 800 s.f. each, a model house at 4,000 s.f. to be located on lot 16 at Trails End Ranch and various other facilities as required for Phase II to be billed on an hourly basis.

4. The revised first phase proposal stated in part:

In addition to the structures currently underway, we propose the new cookhouse cabins 8 and 9, the two additional employee apartments, the covered bridge and the garage addition to the manager's residence be constructed and cabin 4 relocated and remodeled.

revised first phase proposal, gbs&h Architects began to perform services which were beyond the scope of the signed Phase I agreement. Wild West gave gbs&h Architects "verbal authorization" to perform some of the services which had been described in the proposed Phase II agreement and in the revised first phase proposal.

Wild West experienced financial problems in the spring of 1990 and sought additional capital. Wild West ultimately ran out of funds and stopped fulfilling the pay requests which had been submitted by gbs&h Architects and by Jorgensen Engineering. Wild West paid gbs&h Architects for some of, but not all of, the services which were beyond the scope of the Phase I agreement but which Wild West had verbally authorized. The parties agree that Wild West owed gbs&h Architects $54,308.39 for work which gbs&h Architects had performed pursuant to the signed Phase I agreement and the signed 1989 letter agreement.

On April 12, 1991, gbs&h Architects filed a mechanic's and materialman's lien on the Trails End Ranch property. On June 7, 1991, gbs&h Architects filed a complaint in the district court, seeking to foreclose the mechanic's and materialman's lien and seeking damages for a breach of contract on the basis that Wild West failed to pay gbs&h Architects for some of the services and labor which it had provided on the Trails End Ranch project. On July 1, 1991, the parties filed a joint stipulation in the district court to arbitrate and to stay the court proceedings. The stipulation stated:

> [The parties] stipulate pursuant to paragraph 7.1 of the parties['] contract that "Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise."
>
> And further the parties … stipulate in accordance with Section 1–36–104(c) of the W.S., 1977, as amended that the above-

entitled Civil Action shall be stayed as to claims arbitra[ ]ble under the parties' contract until the American Arbitration Association panel has issued its findings and the same are submitted to this Court for its confirmation pursuant to Section 1–36–113 of the W.S., 1977, as amended.

The district court ordered the parties to "submit all appropriate claims" against each other to arbitration.

Before the arbitration began, Wild West filed an answer and counterclaim against gbs&h Architects. Wild West claimed that gbs&h Architects had breached the Phase I agreement and that gbs&h Architects had been negligent in administering the Phase I agreement. In its answer to the counterclaim, gbs&h Architects argued that Wild West's claims were subject to arbitration.

At the beginning of the arbitration hearing, Wild West contended that the arbitrators did not have authority to consider gbs&h Architects's claims which had been made on the basis of the unsigned proposed Phase II agreement. Wild West also argued that Jorgensen Engineering's claims were not subject to arbitration because Jorgensen Engineering was not a party to the arbitration.

After the hearing, the arbitrators entered an award which stated:

> WE, THE UNDERSIGNED ARBITRATORS, … FIND and AWARD as follows:
>
> 1. To [gbs&h Architects] and against [Wild West], the sum of $176,321.24.
>
> 2. To [gbs&h Architects] for the benefit of Jorgensen Engineering, [gbs&h Architects's] subcontractor, and against [Wild West], the sum of $99,532.72.

The administrative fees and expenses of the American Arbitration Association shall be borne by [Wild West] and paid as directed by the American Arbitration Association. Therefore, [Wild West] shall pay to [gbs&h Architects] $2,270.00 for fees paid to the Association.

The fees and expenses of the arbitrators shall be borne by [Wild West] and paid as directed by the American Arbitration Association. Therefore, [Wild West] shall

pay to [gbs&h Architects] $7,880.00 for costs advanced to the Association.

This Award is in full settlement of all claims and counterclaims submitted to this arbitration.

Wild West filed a motion in the district court to vacate or modify the arbitration award. The district court denied Wild West's motion, confirmed the award, and entered a judgment against Wild West.

## ARBITRATORS' AUTHORITY

### A. *Standard of Review*

"[T]he issue of whether the arbitrator exceeded his authority is primarily a question of law. We owe no deference to the trial court's determination of questions of law." *JBC of Wyoming Corp. v. City of Cheyenne,* 843 P.2d 1190, 1194 (Wyo.1992).

The broad freedom an arbitrator has to resolve disputes and fashion remedies is limited by the contractual nature of the arbitration agreement from which he draws his powers.

"The right to have a dispute submitted to arbitration is contractual. An arbitrator's authority is limited by the bounds of the agreement, and courts may vacate awards that extend beyond the contractual scope of arbitration. An arbitrator exceeds his powers when he decides matters which were not submitted to him."

843 P.2d at 1196 (quoting *T & M Properties v. ZVFK Architects and Planners,* 661 P.2d 1040, 1044 (Wyo.1983) (citations omitted)).

### B. *Signed Agreements and Unsigned Proposals*

■ Wild West asserts that the district court erred when it held that the arbitrators had authority to consider all gbs&h Architects' claims. Wild West contends that the scope of the arbitration proceedings was limited to the Phase I agreement.

gbs&h Architects's claims for services which it performed under the Phase I agreement were subject to arbitration because the Phase I agreement contained a clear arbitration clause. 843 P.2d at 1192. gbs&h Architects's claims for services which it performed

pursuant to the 1989 letter agreement were also subject to arbitration because the 1989 letter agreement clearly incorporated "[a]ll terms and conditions of the existing [Phase I] contract," including the arbitration clause. The arbitrators, therefore, did not exceed their authority when they considered the claims for services which gbs&h Architects had performed under the Phase I agreement and the 1989 letter agreement.

gbs&h Architects based its remaining claims upon unsigned proposed agreements. The proposed Phase II agreement contained an arbitration clause which was identical with the arbitration clause which was contained in the Phase I agreement, but it was not signed by Wild West. gbs&h Architects's revised first phase proposal did not contain an arbitration clause, and it also was not signed by Wild West. Neither proposal expressly incorporated the signed Phase I agreement or its arbitration clause.

gbs&h Architects argues that the reference to the "parties['] contract" in the joint stipulation to arbitrate should be interpreted to include the proposals as being modifications to the written Phase I agreement. In support of its argument, gbs&h Architects cites *S.A. Mineracao da Trindade–Samitri v. Utah International, Inc.,* 745 F.2d 190 (2d Cir.1984). The reasoning of that case does not apply here. In that case, either the original agreements which contained the arbitration clauses "expressly contemplated and provided for" the subsequent agreements or the subsequent agreements "expressly refer[red] to" the original agreements. 745 F.2d at 196. Here, the Phase I agreement expressly contemplated only Phase I of the project. Neither of the proposals referred to the Phase I agreement.

The unsigned proposed agreements did not "aris[e] out of or relat[e] to" the signed Phase I agreement, as was required by paragraph 7.1, and were not subject to the arbitration provisions of the Phase I agreement.

### C. *Subcontractor's Award*

■ Wild West claims that the district court erred when it held that the arbitrators did not exceed their authority by awarding

gbs&h Architects $99,532.72 on behalf of Jorgensen Engineering. We agree.

Jorgensen Engineering performed engineering services without having a written contract. The letter which gbs&h Architects sent to Jorgensen Engineering in August 1989 did not contain an arbitration clause and was not signed by either Jorgensen Engineering or Wild West. No "written consent," as was required by paragraph 7.3 of the Phase I agreement, included Jorgensen Engineering in the arbitration. The record does not contain any evidence which indicates that Jorgensen Engineering and Wild West had a separate oral agreement to submit their disputes to arbitration. Because Jorgensen Engineering and Wild West did not have a clear agreement to arbitrate their disputes, the arbitrators exceeded their authority by making an award to gbs&h Architects on behalf of Jorgensen Engineering. *See, e.g., Century Ready–Mix Company v. Campbell County School District,* 816 P.2d 795 (Wyo.1991) (architect had no duty under a similar clause to arbitrate the subcontractor's dispute).

## WILD WEST'S COUNTERCLAIM

Wild West contends that, because the arbitrators failed to award damages on its counterclaim, the district court erred when it confirmed the arbitration award. Wild West's counterclaim alleged that gbs&h Architects had breached the Phase I agreement and had been negligent in administering the Phase I agreement.

> [B]efore we will upset a district court's decision upholding an arbitration award, appellant must have discharged its proof burden by showing with clear and convincing evidence that the award
>
> "... was obtained by fraud, corruption, behavior beyond the bounds of natural justice, ... or a manifest mistake of fact or law appearing upon the face of the award...."

*Northern Supply Company v. Town of Greybull,* 560 P.2d 1172, 1175 (Wyo.1977) (quoting *Riverton Valley Electric Association v. Pacific Power and Light Company,* 391 P.2d 489, 500 (Wyo.1964)). *See also* WYO.STAT. §§ 1–36–114(a), –115(a) (1988) (when court shall vacate or modify an award).

When the arbitrators denied Wild West's counterclaim, they necessarily resolved questions of fact. Wild West failed to present clear and convincing evidence to demonstrate that the arbitrators based their denial on a manifest mistake of fact or on some other improper reason. *Northern Supply Company,* 560 P.2d at 1175.

## CONCLUSION

We affirm that portion of the district court's order which entered a judgment in favor of gbs&h Architects to the extent that it related to the amount[5] owed under the signed agreements. We also affirm that portion of the district court's order which awarded fees and expenses to the American Arbitration Association and the arbitrators.

We reverse that portion of the district court's order which entered a judgment in favor of gbs&h Architects to the extent that it related to the amount claimed on the basis of the unsigned proposals. We also reverse that portion of the district court's order which awarded $99,532.72 to gbs&h Architects on behalf of Jorgensen Engineering.

Affirmed in part and reversed in part.

CARDINE, J. (Retired), files a dissenting opinion.

CARDINE, Justice, Retired, dissenting.

I dissent.

I would affirm the arbitrator's award. The parties signed one contract and by agreement continued to add new projects based on the terms of the "Phase I" contract. All the oral agreements subsequent to the "Phase I" contract were subject to the arbitration clause. The arbitrators did not exceed the scope of their authority because the arbitration provision in the "Phase I" contract was broad and because all of the oral and written

5. The parties agree that, of the $176,321.24 total award, the amount owed under the signed agreements is $54,308.39.

agreements, entered into after the "Phase I" contract was executed, appear to "relate back" to the "Phase I" contract.